SWEENEY, RESPONDENT, *v.* CITY OF BUTTE, APPEL-
LANT.

[Submitted January 24, 1895. Decided February 11, 1895.]

MUNICIPAL CORPORATION—*Liability for injuries from unguarded opening in side-walk.*—When a city knows that an opening and trapdoors, which it permits to exist in a sidewalk, are dangerous, whenever they are used in the manner for which they were built to be used, and ordinarily are used, it need not be shown, in order to hold the city liable for injuries occurring by such use of such a dangerous opening, that it had knowledge or notice that the trapdoors were opened at the particular time the accident occurred. (*Sullivan* v. *City of Helena*, 10 Mont. 134, cited.)

SAME—*Dangerous sidewalk—Question for jury.*—In an action against a city to recover for injuries sustained by reason of falling into a cellar under the sidewalk on one of the streets of the defendant, it appeared that there were double trapdoors in the sidewalk extending across nearly its entire width, and a cellar beneath about ten feet deep. The doors were made to open and lie back flat upon the sidewalk, and there were no rods or hooks to hold the doors upright when open, and if it were desired to keep them upright when opened, appliances other than those belonging to the doors had to be obtained. On the night of the accident the doors were open, and lying flat on the walk, and the plaintiff could not see the opening by reason of the darkness. The city authorities knew the nature of the construction of these trapdoors, and also knew of the manner in which they were ordinarily used, but did not know that they were open at the particular time of the accident. *Held,* that the

case was a proper one for submission to the jury upon the question of the defendant's negligence.

SAME—*Nearsightedness—Contributory negligence.*—In an action against a city to recover for injuries sustained from falling in the night-time into an unguarded opening in a sidewalk, there was evidence tending to show that the plaintiff was nearsighted. The defendant requested the court to instruct the jury, that if the defect of sight, coupled with exposure to danger, was the cause of the injury complained of, which otherwise would not have occurred, then the jury would be justified in finding the plaintiff guilty of contributory negligence. *Held,* no error in refusing to give this instruction.

SAME—*Verdict not excessive.*—In an action to recover for personal injuries, where it appears that the plaintiff's left arm was broken and bruised, and will never be a perfect arm, or as good as it was before it was injured, and in consequence of which the plaintiff was three-fourths totally disabled, a verdict for four thousand five hundred dollars cannot be regarded as given and assessed under the influences of passion and prejudice, and will not be set aside as excessive.

*Appeal from Second Judicial District, Silver Bow County.*

ACTION for damages for personal injuries. Judgment was rendered for the plaintiff by McHATTON, J. Affirmed.

Statement of the case by the justice delivering the opinion:

The judgment in this case was in favor of the plaintiff for four thousand five hundred dollars damages for injuries sustained by reason of the plaintiff falling into a cellar under the sidewalk on one of the streets of the defendant. The defendant appeals from the judgment and from an order denying a new trial.

The complaint alleges the municipal character of the defendant, and its duty to keep its streets and sidewalks in good and safe condition. It further alleges that the defendant disregarded this, its duty, and negligently allowed an opening to be made in a sidewalk, and trapdoors to be placed over said opening on a principal street of the city; that said trapdoors opened into an excavation about eight feet deep and of the width of the sidewalk; that said doors formed a part of the sidewalk and extended across, or nearly across, the entire width of the walk, so that when the doors were open there was not sufficient room to pass with safety upon the sidewalk; that said trapdoors were unlawfully, wrongfully, and negligently constructed, maintained, and used; that at all times mentioned in the complaint they were dangerous to pedestrians; that said trapdoors were negligently used and left open with the knowl-

edge of the defendant for a long period, to wit, two years, and that during that time they were left open at the pleasure of those owning or occupying the premises, either by day or night, without any guards or lights, or barriers, or signals of danger to notify persons traveling upon the sidewalks.

The complaint further alleges that on the twentieth day of December, 1890, about 6 o'clock P. M., plaintiff was lawfully passing upon said sidewalk, and said trapdoors were open without guards, barriers, or lights, and plaintiff, without negligence on his part, stepped into the said opening in the sidewalk, fell to the bottom of the cellar, and sustained injuries, which he describes, to his damage in the sum of fifteen thousand dollars.

The answer denies all of the material allegations of the complaint.

*John W. Cotter*, and *H. G. McIntire*, for Appellant.

A city has no right or power to prevent the reasonable use of a sidewalk, or an opening or trapdoor in a sidewalk, used for the purpose of entering the underground apartments of a building for the storage of goods, etc.  (Dillon on Municipal Corporations, § 734; Deering on Negligence, § 171; Jones' Negligence of Municipal Corporations, §§ 90–93; *City of Lafayette* v. *Blood*, 40 Ind. 62; *Beardsley* v. *Hartford*, 50 Conn. 529; 47 Am. Rep. 677; Elliott on Roads and Streets, 453.)  The basis of corporate liability is notice of such defect, and, if it is not shown that the defendant had notice of the defective condition of the sidewalk at the time and place alleged in the plaintiff's complaint herein, or of the negligent use of such sidewalk at that time, there can be no liability on the part of the defendant.  (*Klatt* v. *Milwaukee*, 53 Wis. 196; 40 Am. Rep. 759; 2 Thompson on Negligence, 762; *Augusta* v. *Hafers*, 61 Ga. 48; 34 Am. Rep. 95; Dillon on Municipal Corporations, §§ 1006, 1015, 1019, 1020, 1022–24, 1026; Deering on Negligence, § 179; *Wines* v. *Lowell*, 1 Allen, 177; Jones' Negligence of Municipal Corporation, §§ 183–89; Elliott on Roads and Streets, 636–43; *Denver* v. *Dean*, 10 Col. 375; 3 Am. St. Rep. 594; *Dundas* v. *Lansing*, 77 Mich. 499; 13 Am. St. Rep. 458; Wade on Notice, § 480 *g*; 2 Thompson on Trials, § 1706.)

The sufficiency of the barrier erected to guard an excavation or opening in a sidewalk is a question of fact for the jury to determine, and the question of the sufficiency of the barriers should be left to the jury to determine as a question of fact under a proper instruction of the court.   (2 Dillon on Municipal Corporations, §§ 1003–05; Thompson on Negligence, 771–76; *Myers* v. *Springfield,* 112 Mass. 489; *White* v. *Boston,* 122 Mass. 491; *Klatt* v. *Milwaukee, supra; Hammond* v. *Mukwa,* 40 Wis. 41; *Seward* v. *Milford,* 21 Wis. 496; *Milwaukee* v. *Davies,* 6 Wis. 384; Jones' Negligence of Municipal Corporations, § 95, note 4; *Johnson* v. *Charleston,* 3 S. C. 232; 16 Am. Rep. 721; *Fernandes* v. *Railway Co.,* 52 Cal. 45; *Wilson* v. *Railway Co.,* 62 Cal. 144; Wade on Notice, § 480 *g.*) Want of ordinary care is the true measure of liability on the part of a municipal corporation against accidents for failure to keep a sidewalk in a safe condition.  (*Johnson* v. *Charleston, supra;* Shearman and Redfield on Negligence, 290, 356; Jones' Negligence of Municipal Corporations, §§ 88–90; 2 Thompson on Trials, § 1705.)  Instruction No. 4, as given by the court to the jury, as requested by the plaintiff, was error.   An instruction stating the law correctly, if it would mislead the jury, is erroneous.  (*Boucher* v. *Mulverhill,* 1 Mont. 306; *Huntoon* v. *Lloyd ,* 7 Mont. 365; Hayne on New Trial and Appeal, §§ 130, 131.)  If the negligence of the plaintiff or injured party in any way materially contributes to the injury he cannot recover damages therefor.  (Deering on Negligence, §§ 12, 13; 4 Am. & Eng. Ency. of Law, 15, 82, 95, 96; *Wilson* v. *Charleston,* 8 Allen, 137; 85 Am. Dec. 693; *Hubbard* v. *Concord,* 35 N. H. 52; 69 Am. Dec. 520; *Hanlon* v. *Keokuk,* 7 Iowa, 488; 74 Am. Dec. 276; *Mt. Vernon* v. *Dusonchett,* 2 Ind. 586; 34 Am. Dec. 467; Jones' Negligence of Municipal Corporations, §§ 207, 208; Elliott on Roads and Streets, 640, 641; *Gosport* v. *Evans,* 112 Ind. 133; 2 Am. St. Rep. 164; *Brannan* v. *Kokomo,* 115 Ind. 115; 7 Am. St. Rep. 411; *Dundas* v. *Lansing,* 75 Mich. 499; 13 Am. St. Rep. 458; Shearman and Redfield on Negligence, §§ 63, 85, 86.)   The blindness or deafness of the plaintiff should be considered upon the question of due care as an evidence of contributory negligence.  (4 Am. & Eng. Ency. of Law, 79, 80, notes 1, 2; Deering on Negligence, § 18; *Harris* v. *Neubelhoer,*

75 N. Y. 169; *Malloy* v. *Railroad Co.*, 84 Mo. 270.) Instruction No. 6, as given by the court to the jury, as requested by the plaintiff, was erroneous, in taking from the jury the question of notice of the existence of the defect in the sidewalk as alleged in the plaintiff's complaint. There is no rule of law prescribing for what length of time the continuance of a defect shall constitute notice of its existence. (*Colley* v. *Westbrook*, 57 Me. 181; 2 Am. Rep. 30; *Weisenberg* v. *City of Appleton*, 26 Wis. 56; 7 Am. Rep. 43; Elliott on Roads and Streets, 638, 639.) The cardinal rule of damages is that the person injured shall receive a compensation commensurate with the loss or injury, and no more. (1 Sutherland on Damages, 17, 18; Elliott on Roads and Streets, 632, 633.) Where the evidence does not sustain the verdict, and it appears to have been returned under the influence of passion or prejudice, it should be set aside. (Hayne on New Trial and Appeal, § 94; *De Brutz* v. *Jessup*, 54 Cal. 119.)

*William Scallon*, for Respondent.

A municipal corporation is liable for its negligence in case of injuries due to defects in streets and sidewalks when the facts essential to recovery are proven, and in case of such proof the liability clearly exists. (Comp. Stats., div. 5, §§ 325, 435–37; *Sullivan* v. *City of Helena*, 10 Mont. 134; *Nebraska City* v. *Campbell*, 2 Black, 590; *Barnes* v. *District of Columbia*, 91 U. S. 540; *District of Columbia* v. *Woodbury*, 136 U. S. 450; 2 Dillon on Municipal Corporations, § 1023; Cooley on Torts, 2d ed., 746; Sackett on Instructions, 364; Elliott on Roads and Streets, 327, 445–47; Jones' Negligence of Municipal Corporations, §§ 57, 58; *Columbus* v. *Strassner*, 124 Ind. 482.) Where a city permits the use of trapdoors or openings in sidewalks it must exercise reasonable care and diligence to see that they are properly constructed, used in a safe and reasonable manner, and sufficiently guarded and protected. (Elliott on Roads and Streets, 453; Jones' Negligence of Municipal Corporations, §§ 88, 94, 95; Sackett on Instructions, 372; *Indianapolis* v. *Doherty*, 71 Ind. 5; *Barston* v. *Beslue*, 34 Wis. 357; *Grove* v. *Kansas*, 75 Mo. 672; *Golesburg* v. *Higley*, 61 Ill. 287.) Knowledge or notice to the city of the opening of

the doors at the very time of the accident is not necessary. (*Smith* v. *Leavenworth*, 15 Kan. 81; 2 Dillon on Municipal Corporations, §§ 1027, 1033; Elliott on Roads and Streets, 453; *Chapman* v. *Mayor etc.*, 55 Ga. 566; Jones' Negligence of Municipal Corporations, 179, 180, 187, 189, 366.) Defendant's motion for nonsuit was properly overruled. And the defendant waived its motion and exception by proceeding with its case and introducing evidence on its part. (*Accident Ins. Co.* v. *Crandal*, 120 U. S. 527; *North Pac. R. R. Co.* v. *Mares*, 123 U. S. 710; *Union Ins. Co.* v. *Smith*, 124 U. S. 405; *Robertson* v. *Perkins*, 129 U. S. 233.) Being blind or shortsighted is not *per se* to be taken as evidence of contributory negligence. (*Davenport* v. *Ruckman*, 37 N. Y. 568; Beach on Contributory Negligence, §§ 396, 397.) Plaintiff is not required to keep his eyes constantly on the sidewalk. (*Woods* v. *Boston*, 121 Mass. 337.) There was some dispute as to the amount of light shining on the sidewalk from lights in the vicinity, but that, as well as the question of contributory negligence, was properly left to the jury. (*Barston* v. *Beslin, supra.*)

DE WITT, J.—We will state what the evidence was which tended to prove negligence, and which the respondent contends was sufficient for that purpose. There was some conflict in the evidence, but not a great deal. It showed the following facts; that is to say, there was ample evidence of the following facts, which evidence the jury apparently believed. The district court, on motion for a new trial, refused to disturb the verdict, and we find no reason to enter upon the question of fact thus settled.

Main street, in the city of Butte, is a great thoroughfare running north and south through the city. At No. 106, on that street, is a cellar under the sidewalk about ten feet deep. In the sidewalk are double trapdoors extending east and west for six feet and eight inches. The width of the doors is each twenty-two inches, and the combined width three feet and eight inches. The sidewalk is about ten feet and three inches wide. On the west side of the trapdoor there are only eighteen inches between the doors and the edge of the sidewalk toward the street. On the east side of the doors there is only

about two feet and three inches between the doors and the abutting building. The doors were made to open and lie back flat upon the sidewalk. That was the plan of their construction. There were no rods or hooks or other appliances to hold the doors upright when open. A two by four piece of timber was kept under the doors. This was laid on top of them when they were opened. It did not tend to keep them upright. In the plan and construction of the doors and the trap the method of operating was to lay the doors flat on the sidewalk when opened. If it were desired to keep them upright when opened appliances other than those belonging to the doors had to be obtained. As to this there is not even any dispute.

On the night of the accident the doors were open and lying flat on the walk; that is to say, there was evidence of that fact, which the jury apparently believed, and, from our reading of the evidence, we observe that such finding was amply sustained.

The city authorities knew the nature of the construction of this trap and these doors, and knew that they were made to lie open flat on the sidewalk unless appliances other than those connected with the doors were brought to their aid. The city authorities did not know that the doors were opened at all at the particular time of the accident.

The ordinances of the city of Butte were proved, showing that the city had assumed jurisdiction over the streets and had created the office of street commissioner and defined his duties. (*Sullivan* v. *City of Helena*, 10 Mont. 134.

At 6 P. M., after dark, December 20, 1890, plaintiff came up this Main street from the south. There was much conflict in the evidence as to the amount of illumination supplied by the lights in the neighborhood. Plaintiff came up the sidewalk along the outer edge of the same. At the southwest corner of the trap his progress was arrested by a box and a barrel standing at that corner, and which therefore blockaded his path along the eighteen inches of sidewalk which was outside of the trap. In order to pass the box and the barrel he turned to the right, and, in stepping forward, he suddenly became aware of a dark spot in the sidewalk, and, before he could withdraw his foot from the step which he had taken upon the

dark spot, he was precipitated into the cellar, the dark spot turning out to be the open trap. He thus received the injuries of which he complains.

This is a statement of the evidence as it appears in the record favorable to plaintiff. There was some conflict in this evidence created by the defendant, but it is not now for us to inquire into such conflict. (See Montana cases on this point collected in *Mattock* v. *Goughnour*, 11 Mont. 274, and also *Brundy* v. *Mayfield, ante, p.* 201; *Lambrecht* v. *Patten, ante, p.* 260; *Bradshaw* v. *Degenhart, ante, p.* 267.)

The defendant moved for a nonsuit, which motion was denied. The same question which was presented on the motion for a nonsuit was also raised in other ways upon the trial. It is necessary to discuss that question but once. It is this, do the facts as above recited make out a case against the defendant, the city of Butte, for negligence in allowing the trap and doors to exist and be operated in the sidewalk as above described, which should have been submitted to the jury?

The further matter of whether this question was properly submitted will be considered later in this opinion, upon the examination of the instructions.

One ground of the motion for a new trial was that there was no statute in this state making municipal corporations liable for injuries, such as plaintiff complains of. This proposition, however, was upon the argument, abandoned by the appellant. (*Sullivan* v. *City of Helena, supra.*)

The appellant argues that the city of Butte has no right to prevent the reasonable use of the sidewalk by an abutting owner, for, if it did so, there would be no ingress or egress for such cellars as that described in the complaint, and that the property rights of such owners would thus be confiscated. Appellant's further argument is that as the city cannot prevent such reasonable use it is therefore not liable in this case. But no such proposition is presented in the case at bar. It is not conceded.that the use of this trap was a reasonable one. The question in the case was the allowance by the city of the maintainance of such trap which was alleged to be a negligent and careless and dangerous condition of affairs. The case at bar

is not such a one as the *City of Lafayette* v. *Blood, supra,* cited and relied on by the appellant. In that case an eighteen inch coal-hole in the sidewalk was open for a few moments to put in coal, and the plaintiff, a child, fell in. There was a finding in the case that there was no defect in the construction of the sidewalk and coal-hole. There is not such a finding in the case at bar, where the evidence showed that the opening in the sidewalk occupied about seven-tenths of the width of the whole walk and was itself of a width which would require a man to run in order to clear the chasm when open. Furthermore no barriers were constructed in the doors or opening. The ordinary method of using the doors was to lay them flat on the sidewalk. The city authorities knew all of these facts. They knew of the existence and the nature of the trap and the method in which it was built to be used as above described. These things they permitted when it was the duty of the city to keep the sidewalks safe for travel. By reason of the existence of this trap, and by reason of its being used on December 20th, as the nature of its construction permitted and suggested, if indeed they did not intend that it should be used, the plaintiff was injured.

Negligence is a question of fact for a jury. If there be clearly no negligence the court may so determine and grant a nonsuit. We certainly shall not hold in this case that, by the facts shown, it clearly appeared to the district court that there was no negligence by the city, defendant. We are of the opinion that it was proper that the case should go to the jury. As to the city's liability in permitting the careless and negligent use of the sidewalk see: *Sullivan* v. *City of Helena, supra; Barnes* v. *District of Columbia, supra; District of Columbia* v. *Woodbury, supra;* 2 Dillon on Municipal Corporations, 1023; 3 Cooley on Torts, 625; Jones on Negligence of Municipal Corporations, § 57; *Indianapolis* v. *Doherty, supra; Barstow* v. *City of Berlin, supra; Galesburg* v. *Higley, supra; Smith* v. *City of Leavenworth, supra; Davenport* v. *Ruckman, supra.*

By adopting this view as to the motion for a nonsuit we also dispose of the objections to those parts of the instructions which in effect express the same view of the district court as the court by necessary implication expressed in denying the

motion for a nonsuit.  We are satisfied that the instructions generally in this respect fairly and clearly submitted to the decision of the jury the question of negligence.  They will be quoted below, and some particular objections to some of them will be specially noticed.

Another matter presented by the appellant is, that the city authorities had no notice that the trapdoors were opened at the time the accident occurred.  This is true, as noted in the statement of the evidence which we have made above.  The question, therefore, thus presented is this: if a city has knowledge of, and permits to exist, an opening and trapdoors in the sidewalk, which the city knows are dangerous whenever they are used in the manner for which they were built to be used and ordinarily are used, then, in order to hold the city liable for injuries occurring by such use of such a dangerous opening, must it be shown that the city has knowledge that the dangerous thing is used at the particular time when the accident occurs?  We think not.  We are of the opinion that to so hold would be wholly unreasonable and illogical.  If the dangerous thing exists for a given use, the city permitting it to so exist for such use, the city must presume that it will be so used.  These trapdoors and this opening in this case were for a given use and the city knew of that use, and the city certainly cannot avoid liability by demanding that it be notified every time the dangerous thing is put to the use intended and contemplated by its existence and construction.  (*Smith* v. *Leavenworth, supra;* 2 Dillon on Municipal Corporations, § 1026, note, and cases cited.)

It is said by Judge Dillon in the note last cited: "If the defect arise otherwise than from faulty structure, and from some act other than the direct conduct of the defendants or their servants, and be a recent defect, it is generally necessary to show that defendants or their servants had knowledge thereof or were negligently ignorant of it."

Numerous cases are cited to sustain the text.  But, in the case at bar, the defect did not "arise otherwise than from faulty structure."  The faulty structure was the dangerous element.  Nor was the defect "recent."  It belonged to the structure.  The defect did not arise "from some act other

than the direct conduct of the defendant." The direct conduct of the defendant allowed the defect to exist. The circumstances, as noted by Judge Dillon, did not exist in this case which would require any special knowledge to be brought to the defendant city.

It is charged in the answer of the defendant that whatever injuries plaintiff received were by reason of his own contributory negligence. About the only evidence in this respect which is now claimed to show contributory negligence was the testimony tending to show that the plaintiff was nearsighted. Upon this subject the defendant asked the following instruction:

No. 9. "You are instructed that where a shortsighted person is injured in a public place where sight is ordinarily required that the shortsightedness of the person injured does not of itself establish contributory negligence as a matter of law, but the shortsightedness of the person injured may be considered by the jury, if the fact of the shortsightedness of the plaintiff appears from the evidence in the case, upon the question of due care, and as an evidence of contributory negligence; and, if it appears from the evidence that the defect of sight, coupled with exposure to danger, was the cause of the injury complained of, which otherwise would not have occurred, then and in that event the jury will be justified in finding that the plaintiff was guilty of contributory negligence, and if you so find from the evidence that the plaintiff was guilty of contributory negligence you should find a verdict for the defendant in the action.

This instruction was by the court refused. We think that this was no error. The fact of the nearsightedness is certainly not of itself evidence of contributory negligence. (*Davenport* v. *Ruckman, supra; Barstow* v. *City of Berlin, supra;* Beach on Contributory Negligence, §§ 396, 397.)

Appellant contends that instructions 2, 3, 4, and 6 are inconsistent with instruction No. 11. Those instructions are as follows:

No. 2 given. "The jury are instructed, that, if the city authorities knowingly permitted a person to occupy, open, or obstruct the sidewalk it is the duty of such authorities to use all reasonable care and precaution to see that the person so per-

mitted properly guards and protects such opening or obstruction, and if the city authorities negligently fail to perform such duty the city would be liable to one who is injured, by reason of such opening or obstruction, if he were himself at the time using ordinary care for his own safety."

No. 3 given. "The jury are therefore instructed, that, in this case, if they find from the evidence that the city authorities knowingly permitted a person or persons to occupy or open such sidewalk, at the place in question, and negligently failed in their duty to use all reasonable care and precaution to see that the person, or persons, so permitted properly guarded and protected such opening or obstruction, and that such opening or obstruction was not properly guarded or protected, and that by reason thereof the plaintiff was injured, and was at the time in the use of reasonable care for his own safety, you should find for the plaintiff."

No. 4 given. "You are instructed, that, if you find from the evidence in this case, that the city of Butte permitted a cellar-way or area-way to be constructed or maintained under the sidewalk of Main street at the place alleged in the complaint, and that the said cellar-way or area-way was not guarded except by trapdoors, and was dangerous for persons traveling on said sidewalk when such trapdoors were not closed or one of them was not; and if you further find from the evidence that the city permitted the persons owning or occupying the adjoining lot, or persons acting under them, to open or close said trapdoors, or either of them, at their option, at or about the time alleged in the complaint; and that the said trapdoors, or one of them, was open, and that the plaintiff, without fault on his part, fell into said cellar-way or area-way and was thereby injured, then you shall find for the plaintiff."

No. 6 given. "You are instructed that, if the mayor and the street commissioner of the city of Butte, or either of them, knew, prior to the time of the alleged injuries to the plaintiff, that persons were in the habit of opening or closing, at their option, trapdoors in the sidewalk at the place in question, and that said trapdoors when open left a dangerous place in the sidewalk (if you find from the evidence that there were such trapdoors, and that such persons were in the habit of so open-

ing and closing the same, and that the place was dangerous when the doors were open); and that said officers had such knowledge for a length of time sufficient to enable them to put a stop to the practice or to adopt proper precautions to insure the safety of persons traveling on the sidewalk, and did not interfere or adopt such precautions, and that such persons were allowed to continue such practice, then you will find that the city permitted the existence of trapdoors, and the opening and closing of the same by said persons at the latter's option.

No 11 given. "You are further instructed that, notwithstanding the jury may believe from the evidence that the sidewalk at the time of the alleged injury was defective, yet this alone would not be sufficient evidence of negligence on the part of the defendant. In order to charge the defendant with negligence it must appear from the evidence not only that the sidewalk was defective at the time of the alleged injury, but it must further appear that such defect was actually known to the city through some of its officers, agents, or servants, or that the defect had existed for such a length of time prior to the alleged injury that the city, if exercising ordinary diligence, would or should have known of the defect."

These instructions are consistent, and we are of the opinion that they state the law correctly. (See authorities above cited.) The instructions, stating it briefly, say to the jury that, if it appears from the evidence that the alleged dangerous defect existed in the sidewalk, and that the city knew of it and permitted it, and plaintiff was injured thereby without his own fault, the city was liable. It is perfectly apparent that there was evidence, as above noted, to justify these instructions. The instructions refused, on the other hand, present a different view of the law and one inconsistent with those given. We are of the opinion that there was no error in giving or refusing the instructions.

Another ground of motion for a new trial was "excessive damages awarded plaintiff by the jury in said cause appearing to have been given and assessed under the influences of passion and prejudice." (Code Civ. Proc., § 296.)

It is argued by the appellant that the evidence does not at all justify a verdict in the amount of four thousand five hun-

dred dollars, and that therefore it must be concluded that the same was given under the influences of passion and prejudice. The defendant's left arm was broken and bruised. The physician who treated him testified as follows:

"There is some atrophy of the muscles of that arm, some wasting; there has been more or less of a thickening taken place about the joint where the fracture was. The fracture was the head of the bone of the arm. There was a separation of the head of the bone over the shaft. The head was broken from the shaft. During the healing of the fracture, if every thing is favorable, the callus is absorbed. That is not wholly true in this case. I don't think that the plaintiff's arm will ever be a perfect arm, or as good as it was before it was injured; at present there is some enlargement of the bony tissue interfering with the freedom of motion. He could do some manual labor with it. He would be a person, if I was rating him from the experience I have had as an examining surgeon for the government, I would rate him three-fourths totally disabled. He was under my treatment for about six weeks, when he was coming regularly to my office. The injury was of a painful nature. Persons injured in this manner would necessarily suffer some pain; generally I would say that they would suffer pain for some time; during the healing process there would not be as much pain as when attempting to gain motion in it. There would be more pain in it then. I examined him at different times for three or four months. In a degree a man might use that arm; he might use it to eat with or to hold his fork, probably. When I say three-fourths totally disabled, that is three-fourths total disablement of the entire person. As to the ratio of disablement of that arm alone there is no such rating. I have had no experience in such rating as to a particular limb. Rates are not given in that way. It takes the percentage from a man's capability of earning a livelihood by manual labor. I should judge he was fifty years of age; he may be sixty; he may not be over forty. He has the appearance of premature age. I think under difficulties that this man might be able to hold, if he was right handed, one end of an ax and split his own fuel for his house if he was keeping house. He might be able to do most any kind of

manual labor. He could do a certain amount of work, probably might be able to do one-fourth as much as a man would do, but it would be under difficulties. No kind of labor would be beneficial to him that would cause motion in that joint. I required him for months to go through a very severe pain trying to break up the adhesion in the joint by extending his arm and working it up the side of the house or other exercise."

The doctor also said: "He could wield a pick in a mine in his left hand, as I said, and use his other arm—depend upon his right mostly—he could do a certain amount of work."

There is some other testimony by the doctor as to gymnastics and parallel bars, but we think that this was simply some humor between the witness and the counsel. The plaintiff himself also testified to the injury. This is all the testimony there was as a basis for finding the amount of damages. In the case of *Kennon* v. *Gilmer*, 5 Mont. 257, there was a verdict for twenty thousand seven hundred and fifty dollars. The injury there was the loss of a foot. The amount of the verdict was greater than could have been given to the personal representatives of the injured person if he had been killed. The court cut the amount down to ten thousand seven hundred and fifty dollars. In rendering their decision they quote the following case of the *Union Pac. R. R. Co.* v. *Hand*, 7 Kan. 393, as follows: "Of course, courts are reluctant to interfere with the verdicts of juries on the ground of excessive damages; but, to uphold them where a great wrong has been done, would, as a precedent, be doing an infinite wrong to the community. The rights of parties are submitted to the unbiased judgment of juries, not to their passions or prejudices, and, where it is apparent that these feelings have entered into and influenced their decision, it becomes the duty of the court to see that a tribunal organized to administer justice is not perverted from its proper purpose to become the instrument of oppression and injustice."

The question, therefore, is, in the case at bar, is it apparent that the verdict was rendered under the influences of passion and prejudice. We are of the opinion that there is not sufficient in the record to show that such sentiments entered into the consideration of the jury. It is argued that when the doctor testified that the plaintiff was three-fourths totally dis-

abled, that he meant that this disability came partially from causes other than the injury to the arm. But it appears that the doctor was testifying as to the injury to the arm only, and the fair conclusion from his testimony is that the injury to the arm caused this three-fourths disability. He says he does not rate the arm as a separate item, but he evidently means to say that, by virtue of the injury to the arm, the whole physical capacity of the man is reduced to one-fourth of a whole man. There is no testimony whatever in the case to contradict that of the doctor and the plaintiff in this respect. It is not shown that plaintiff was suffering from any disability prior to the time of the accident. The jury, under our system of jurisprudence, is the tribunal to determine the amount of damages which should be awarded to a plaintiff if it is shown that he is injured by the fault of the defendant. Under our statute the ground for a new trial in this respect is excessive damages given under the influences of passion and prejudice. It is not claimed by the appellant that there is any thing whatever in this case to show passion and prejudice beyond the fact that a verdict was given for a larger amount than the appellant thinks the evidence justifies. But as to that, as above remarked, the jury are the judges. We do not think that the showing in this case authorizes us in granting a new trial, or in reducing the verdict, in case the respondent did not accept a new trial. (2 Thompson on Negligence, § 66, p. 1269, and cases cited.)

In a similar matter the supreme court of Massachusetts said: "In regard to the first reason assigned for a new trial we are of opinion that the damages assessed are not so excessive and unreasonable as to warrant the interference of the court in a matter which is peculiarly within the province of the jury to determine. In all cases where there is no rule of law regulating the assessment of damages, and the amount does not depend on computation, the judgment of the jury and not the opinion of the court is to govern, unless the damages are so excessive as to warrant the belief that the jury must have been influenced by partiality or prejudice, or have been misled by some mistaken view of the merits of the case." ( *Worster* v. *Proprietors of Canal Bridge*, 16 Pick. 541.)

VOL. XV.—19

We have reviewed all the errors assigned in this case, and are of the opinion that the judgment and the order denying a new trial must be affirmed, and it is so ordered.

*Affirmed.*

PEMBERTON, C. J., and HUNT, J., concur.

