THE HON. WILLIAM T. PIGOTT, ⎫
⎬ Associate Justices.
THE HON. GEORGE R. MILBURN, ⎭

## ROBINSON, RESPONDENT, v. MILLS, APPELLANT.

(No. 1,271.)

(Submitted February 28, 1901. Decided June 7, 1901.)

*Municipal Corporations—Excavation in Streets—Nuisance— Failure to Fill Excavation—Negligence—Liability of Person Making Excavation—Liability of Receiver—Permission to Sue Receiver—Necessity—Instructions—Notice.*

1. One who creates or maintains a nuisance in a street is liable to a passenger who, being himself without negligence, is injured thereby.
2. An unauthorized excavation of a city street is a nuisance *per se.*

(391)

3. The failure to replace a city street in its former safe condition after the purpose of an authorized excavation has been accomplished constitutes a nuisance.

4. Under Political Code, Sec. 4800, Subd. 73, requiring a city street excavated by the permission of the city authorities to be placed in as good condition as formerly existed by the person making the excavation, a water company authorized to make an excavation is negligent in failing to use the highest degree of care to fill the excavation in such a manner that it will not be rendered dangerous by the action of rain, frost, etc.

5. Under Political Code, Sec. 4800, Subd. 73, a water company authorized to make an excavation is liable to an individual for injuries received through its negligence in failing in its duty to restore the street to its former safe condition.

6. A receiver of a water company, appointed after the excavation has been filled, but before the occurrence of an accident resulting from its negligence in making the fill, is liable for such injuries, though he has no notice of the defect, since the appointment cast on him the duty of repairing the street, and he is presumed to have knowledge of the defect.

7. Under 25 U. S. Stat. 435, Sec. 3, authorizing suits against federal receivers without the consent of the appointing court in respect to any act of the receiver in carrying on the business, an action may be brought without consent against the receiver of a water company, who continues its business, for his failure to put a street in a safe condition, though it was excavated and defectively filled by the company before his appointment.

8. An instruction, in an action for injuries received by reason of the defective filling of an excavation in a city street by a water company authorized to make the excavation, and required by Political Code, Sec. 4800, Subd. 73, to place the street in as good condition as before the excavation, that it is incumbent on the company to restore the street to as good condition as before the excavation, is not erroneous on the ground that the exact restoration of the street is impossible, but is to be construed as only requiring its restoration to its former safe condition.

9. An instruction, in an action for injuries received by reason of the defective filling of an excavation in a city street by a water company authorized to make the excavation, that it is liable for injuries resulting from its failure to put the street in its former condition, as required by Political Code, Sec. 4800, Subd. 73, is not erroneous in imposing the liability of an insurer, when considered in connection with other instructions only requiring the exercise of the highest degree of care.

10. Where instructions are upon a material point, and are in conflict, a new trial will be granted, unless it also appears that the appellant has suffered no prejudice.

11. Where conflicting instructions are upon an immaterial point, and it is not reasonably apparent that the jury have been misled, a new trial will not be granted.

12. Where a receiver is appointed for a water company which has negligently failed to properly fill an excavation made in the street, and suit is brought against the receiver for an injury resulting therefrom, after his appointment, error in contradictory instructions, some of which state his liability as dependent on notice and others as being absolute, does not authorize the reversal of a judgment for plaintiff, since the liability is not dependent on notice, and it is immaterial whether the question of notice was considered by the jury.

13. Where a receiver of a water company continues employees of the company who have formerly made and negligently filled an excavation in the street, and who attempt to remedy the defect after his appointment, their knowledge of the defect, or of facts sufficient to impart notice thereof, constitutes notice to the receiver.

*Appeal from District Court, Lewis and Clarke County; S. H. McIntire, Judge.*

Action by Lou M. Robinson against James H. Mills, as receiver of the Helena Consolidated Water Company. From a judgment in favor of the plaintiff, and from an order denying a motion for a new trial, the defendant appeals. Affirmed.

## Statement of the Case.

Action for damages caused by a defect in a street in the city of Helena. The plaintiff alleges in her complaint that the Helena Consolidated Water Company, under authority of an ordinance of the city of Helena approved January 15, 1890, granting to the company a franchise for that purpose, was engaged in supplying water to the city and its inhabitants until March 16, 1896; that under its said franchise it had the right to lay pipes and mains through all the streets of the city, and for this purpose to make excavations in the streets, provided that it was the duty of the company, under the law and the ordinance, to restore the streets in every instance to the same safe condition in which they were before any such excavations were made; that up to March 16, 1897, the company had maintained a pipe or main under and through Eleventh avenue, one of the streets of the city; that a short time prior to that date it had made an excavation in that street near its intersection with Raleigh street, which it had thereafter only partially filled; that this excavation was negligently allowed to remain unfilled, so that the street was not again put in as good condition as when the excavation was made; that on March 16, 1897, in a suit pending in the United States circuit court for the district of Montana, the defendant was by the court appointed receiver for the corporation, and authorized to take possession of all the property and effects belonging to it, and to continue its business; that the defendant entered upon the discharge of his duties under the order, and continued the business as directed therein; that, notwithstanding his duty in that behalf, the de-

fendant neglected to fill the excavation aforesaid until May 24, 1897, though the unsafe condition of it was well known to him, or should have been well known to him if he had exercised reasonable diligence to ascertain its condition; that on the date last mentioned the defendant, through his agents and servants, cast dirt and soil into the excavation, so that it appeared to be filled up, but that the work was so negligently done that a hole or space was left underneath the surface of the street, by means of which the street was rendered dangerous; that on the evening of May 24, 1897, the plaintiff, without knowledge of the unsafe condition of the street, and without negligence on her part, drove her carriage over the same; that the horse which she was driving broke through the surface of the street over the hole or space, and thereupon became frightened and ran; that the carriage in which the plaintiff was riding was drawn against a fire plug near by, overturned and demolished, and by reason thereof plaintiff was thrown violently to the ground, cut about the head and face, and seriously hurt internally; that from these injuries she continues to suffer and be sick and sore and lame; and that by reason thereof, and the destruction of her carriage, she has suffered damages in the sum of $2,000.

The defendant, admitting that the Helena Consolidated Water Company made the excavation in question in the conduct of its business, denies any negligence or omission of duty in the premises by the company by reason of which the street was rendered or left defective or dangerous. He denies any negligence or omission on his part after he took charge of the property and business of the company, and alleges that, if any defect in the street existed by reason of any default of duty on the part of the company, the same was not known to him, and could not, by reasonable diligence on his part, have become known to him, so that he was burdened with any duty to the plaintiff because of his continuance of the business of the company under his trust. He also alleges contributory negligence on the part of the plaintiff.

This appeal is from a judgment in favor of the plaintiff for $1,250 and from an order denying the defendant's motion for a new trial.

*Messrs. Clayberg & Gunn* and *Mr. William Wallace,* for Appellant.

*Mr. T. J. Walsh,* for Respondent.

MR. CHIEF JUSTICE BRANTLY, after stating the case, delivered the opinion of the Court.

1. When plaintiff had concluded the introduction of evidence, counsel for the defendant moved the court to direct a verdict in his favor on the ground that the complaint did not state a cause of action against him, for the reasons that the duty, if any, to remedy any defect in the street occasioned by the excavation therein by the water company, was a duty owing to the city of Helena, and to no one else, and that there was no duty resting upon the defendant to remedy such defect. The court overruled the motion, and defendant assigns error.

Subsection 73 of Section 4800 of the Political Code provides: "The city or town council has power: To permit the use of streets and alleys of the city or town for the purpose of laying down gas, water and other mains, but no excavation must be made for such purpose without the permission of the council, and the streets and alleys must be placed in as good condition by the person making the excavation as they were before the excavation was made, and the mains laid down, and in default thereof the council may order the same to be done at the expense of such person."

The argument of counsel upon the first ground of motion is that under the statutes of Montana governing the organization of cities, and from which they derive their powers, exclusive jurisdiction over and the right to control the streets and alleys rests with the city; that the council may, under the provision quoted, grant permission to a water company to make such excavations in the street as the nature of its business requires, but that the primary duty to the public to properly fill such excavations and res〈 〉re the streets to their former condition is cast in each instan〈〈〉 upon the city, and not upon the corpora-

tion acting under such permission or license. In other words, however much such a corporation may be guilty of negligence and disregard of its obligation to the city under the license, it is not liable to the passenger upon the street for any injury resulting from such neglect of duty. If, therefore, a person injured has any recourse, it is against the city, which alone is liable, and the corporation which has caused the injury suffers no other penalty or liability than that of having the street restored at its expense. As conclusive of this contention, counsel cite among other cases: *City of Rochester* v. *Campbell,* 123 N. Y. 405, 25 N. E. 937; *Taylor* v. *Railroad Co.,* 45 Mich. 74, 7 N. W. 728, 40 Am. Rep. 457; *City of Keokuk* v. *Independent Dist. of Keokuk,* 53 Iowa 352, 36 Am. Repts. 226, 5 N. W. 503; *City of Hartford* v. *Talcott,* 48 Conn 525, 40 Am. Rep. 189; *Hill* v. *City of Fond du Lac,* 56 Wis. 242, 14 N. W. 25; *Kirby* v. *Boylston Market Association,* 14 Gray 249, 74 Am. Dec. 682; *City of St. Louis* v. *Connecticut Mut. Life Ins. Co.,* 107 Mo. 92, 28 Am. St. Rep. 402, 17 S. W. 637. In *City of Rochester* v. *Campbell* it appears that the charter of the city imposed upon the owners of lots the duty of keeping in repair the adjoining sidewalks, and to clear away therefrom all snow and ice or other obstructions. In case of default on part of the owner, the city authorities, after notice to him, could have the repairs or other work done at his expense. The sidewalk adjoining defendant's premises had fallen into disrepair, and by reason of this condition a passenger was injured. The city, having been compelled to pay a judgment for damages, sought to fix liability upon the defendant for the amount so paid. It was held that the city could not recover. This conclusion was based upon the theory that the primary obligation to keep the streets in order rested with the city; that the obligation cast upon the abutting lot owner was subservient to that resting upon the city, to be performed or neglected, at the pleasure of the city authorities; and that it was inconsistent with this power of exclusive control in the city and its resultant primary duty to suppose a primary duty cast upon the

defendant also.   The principle of this case is supported by the
other cases cited, and by the current of authority, but it has
no application here.   Under the common law no duty rested
upon the lot owner to keep the adjoining streets or sidewalks
in repair.   In every case where this duty is cast upon the owner
it is by virtue of a provision of the charter or an ordinance of
the city under its charter powers, and the liability arising from
neglect is to the city, and not to the public.   It is equally as
well settled by the current of authority that one who creates
or maintains a nuisance in a street is liable to a passenger who,
being himself without negligence, is injured thereby.   (2 Dill.
Mun. Corp. Sec. 1032; *City of Rochester v. Campbell,* and
other cases cited; *Village of Port Jervis* v. *First Nat. Bank
of Port Jervis,* 96 N. Y. 550; 15 Am. & Eng. Enc. Law (2d
Ed.) 433; *Webster* v. *City of Beaver Dam* (C. C.) 84 Fed.
280; *Toutloff* v. *City of Green Bay,* 91 Wis. 490, 65 N. W.
168.)   This principle was recognized by this court in *Cannon*
v. *Lewis,* 18 Mont. 402, 45 Pac. 572, where it was held that
the defendant was liable for injuries to a passenger who fell
into a cellar way of the defendant, left open in the sidewalk
upon a street in the city of Butte.   A clear distinction exists
as to the relations of the parties to the public in the two cases,
and their resultant duties are based upon wholly different con-
siderations.

An unauthorized excavation or other obstruction in a street
is a public nuisance *per se.*   None the less does one made by
permission of the city, or under authority of a license or con-
tract, become a nuisance, if it is left unguarded during the
progress of the work, or if the street is not restored to its
original condition when the purpose of the excavation has been
accomplished.   In the latter case the doing of a lawful thing
in an unlawful way makes it a nuisance, in the same way as
if it were a nuisance in the beginning.

Under the section of the statute quoted, the city council had
the power to grant to the water company the right to lay its
pipes and mains.   This carried with it the obligation to keep

them in repair. Without permission thus granted by the city, every excavation in the street would have been a nuisance in the first instance, and the company would have been liable for any injury caused by it, without reference to the question of negligence. Acting under the permission granted, it would become guilty of maintaining a public nuisance if it negligently left an opening unguarded, or if, at the end of the work, it left the street in such condition that it was then unsafe, or would become so by the operation of natural causes,—such as the effect of rains or frost upon the earth. The obligation assumed by the water company was, therefore, carefully to guard the work during its progress, and to restore the street when the work was ended, so far as human foresight could go, to as safe a condition as that in which it found it at the time the excavation was begun. In support of these views we cite: *Drew* v. *River Co.,* 6 Car. & P. 754; *Johnson* v. *Friel,* 50 N. Y. 679; *Dillon* v. *Gaslight Co.,* 1 McArthur, 626; *Southern Exp. Co.* v. *Texarkana Water Co.,* 54 Ark. 131, 15 S. W. 361; *Reeves* v. *Larkin,* 19 Mo. 192; *McMahon* v. *Railroad Co.,* 75 N. Y. 235; *City of Brooklyn* v. *Brooklyn City R. Co.,* 47 N. Y. 475, 7 Am. Rep. 469. In *Johnson* v. *Friel, supra,* the language of the court is: "It was not enough that defendant left the work in a proper and safe condition for the time, but it was his duty to anticipate and provide for the natural effect of rains upon earth excavated and replaced, to see that during and after the rain it was in proper and safe condition, or that safeguards were placed about it, or watchmen kept near it, or such measure of prudent forethought adopted to prevent damage to the traveling public."

If the injury complained of here had occurred before the water company surrendered its property to the receiver, it is idle to say that the water company would not have been liable. In the light of the principles stated, it was its duty not only to restore the street to the condition in which it found it, but also thereafter to anticipate and guard against the effect of natural causes which would probably operate to render it again

dangerous because of the fact that the earth had been disturbed by the company's necessary work.

Substituting the water company as defendant in place of the receiver, the allegations in the complaint are sufficient to state a cause of action against it.

The argument upon the second ground of the motion is that, as the receiver did not cause the defect in the street, he cannot be held liable, no matter what liability may attach to the water company. It is undoubtedly the rule that a receiver cannot be held liable for an injury occasioned by a wrong or neglect of duty by the corporation whose property has subsequently been placed in his hands. A receiver is the arm of the court; the property is placed in his hands for safekeeping pending the litigation; but if under the direction of the court he continues the business of the corporation, his duty and liability begins from the date at which he assumes control and begins his operations. He is substituted for the corporation, and from that moment he assumes toward the public the duties and liabilities of the corporation. If the property is out of repair, and a due regard for public safety requires it to be put in repair, the duty is cast upon him, and for the neglect of such duty he becomes liable to any person injured by such neglect. Undoubtedly the ordinance granting the franchise to the water company to lay pipes and mains in the streets of the city was in the nature of a contract between the company and the city, the consideration of which on the part of the company was that the company would in each instance restore the streets to the condition in which it found them. In receiving the franchise it undertook to perform the resultant duty to the city of restoring the streets. (*People* v. *Chicago & A. Railroad Co.,* 67 Ill. 118; *Village of Port Jervis* v. *First Nat. Bank of Port Jervis, supra.*) A failure on its part in this duty to the city necessarily resulted in the creation of a nuisance. The assumption of the business of the company by the receiver carried with it the assumption also of all the duties owed by the water company to the city as well as to the public. If the excavation in ques-

tion in this case had not been properly repaired at the time
the receiver assumed charge of the property, then the obliga-
tion devolved upon the receiver, he having succeeded to the
exclusive control and management of the property and business,
to restore the street and thus perform his duty toward the city
and protect the public against injury. The duty of the corpo-
ration to the public was a continuing one, and the receiver, as
successor in title of the water company, was bound to remedy
the defect caused by the water company. (*Vaughan* v. *Rail-
way Co.*, 72 Hun, 471, 25 N. Y. Supp. 246.) It cannot be
said that the receiver could operate the property under the
franchise of the company and still not be subject to any of the
obligations of the company. The receiver was bound to know
the condition of the property. He was bound to know of the
ordinary operation of the laws of nature, and was therefore
presumed to have knowledge that the defect existed in the street
at the time he assumed possession of the property. The com-
plaint, while not a model of pleading in so far as it attempts
to charge the receiver, states facts from which the inference
of duty on his part must necessarily arise. This is especially
true under the circumstances of this case, the defendant having
proceeded to trial without any seasonable attack upon the plead-
ing, and having treated it as sufficient.

2. The court having refused to direct a verdict on the
grounds just discussed, counsel then moved for a dismissal of
the action on the ground that it did not appear either from the
allegations in the complaint or from the evidence that the plain-
tiff had first obtained from the United States circuit court leave
to sue its receiver. Counsel argue that, as an attempt is made
in this case to hold the receiver for a wrong done by the water
company, and not "in respect to any act or transaction of his
in carrying on the business connected with" the property of
the company, permission to bring the action should have been
obtained. This contention proceeds upon the same theory as
that involved in the second ground of the former motion. Of
course the lower court should have sustained this motion, as

well as the former, if it became apparent during the progress of the case that the injury complained of could not be chargeable to any act or omission on the part of the receiver. The receiver could not be held for any wrong done by the company, and in the absence of sufficient allegation and proof to show that the injury complained of by the plaintiff was the result of a violation or neglect of duty by him, the action could not be maintained against him either with or without permission from the court appointing him. As we have seen, however, the complaint states, *prima facie,* a cause of action against him for his neglect of duty in connection with the management of the business in his hands, and therefore a case is presented which falls clearly within the provision of the statute (25 U. S. Stat. 435, Sec. 3) authorizing suits to be brought against a federal receiver without leave from the appointing court. (*Meyer v. Harris,* 32 Vroom 83, 38 Atl. 690; *Stoltz v. Railroad Co.,* 104 Wis. 47, 80 N. W. 68; *McNulta v. Lochridge,* 141 U. S. 327, 12 Sup. Ct. 11, 35 L. Ed. 796; *Texas & P. Railroad Co. v. Johnson,* 151 U. S. 81, 14 Sup. Ct. 250, 38 L. Ed. 81.) The section of the statute cited, which is the same as Section 3 of the Act of Congress of March 3, 1887 (24 U. S. Stat. 553), was construed in *McNulta v. Lochridge, supra,* and it was there held to apply not only to causes of action arising out of the conduct of the receiver himself or that of his agents, but also to those arising out of the conduct of his predecessor.

3. Counsel further contend that even if it be conceded that the receiver was properly made defendant, instead of the water company, the court erred to his prejudice in several of the instructions submitted to the jury.

It appears from the evidence that on or about December 21, 1896, one of the mains of the water company on Eleventh avenue near its intersection with Raleigh street had sprung a leak. The company, having been notified, sent workmen to repair it. To do so it was necessary to excavate a trench down to the main and about seven feet along the street. The main was near the sidewalk. At that season the weather was cold, and as fast as

the dirt, wet by the escaping water, was thrown out it froze hard. When the repairs were completed the trench was refilled with the frozen dirt, which had to be broken up into lumps. It was not possible at that time to replace all the dirt, its condition and that of the weather rendering tamping or puddling impracticable. As one of the witnesses says: "We filled the hole, * * * and rounded it up, arching it a little." So it remained without further attention until "some time in the spring," when the foreman of the company went to see the condition of it. The earth was not then thawed. Later, in March, one of the employees of the company examined the trench, and finding it somewhat settled threw in the dirt left at the sides. Later again this same employee was notified by the city street commissioner of the depression at that point. He thereupon hauled some dirt and threw it into the excavation. There was some evidence tending to show that on the day of the accident an employee of the company again leveled up the trench. There was also evidence tending to show that it was not unusual, when such a trench had been filled as was this one, for the dirt to form into a crust at the top, which not settling with the body of the dirt in the trench, concealed a cavity beneath, so that when the weight of a team came upon it it would break through. This was shown to be a condition in this instance in addition to the depression at the surface, and the breaking through this crust by plaintiff's horse was the occasion of the accident. The plaintiff stated that she saw as she drove by the place earlier in the evening that some one had recently filled the trench, and for that reason did not take care to avoid the place as she was returning home, when the accident occurred. The receiver was appointed on March 16, and at once entered upon the discharge of his duties. He did not give his personal attention to the repairing of pipes, but left this duty to the foreman and other employees of the company whom he retained in his service.

Upon these facts the court submitted to the jury, among other instructions, the following, in substance:

(1) That under the ordinance of the city of Helena the

water company had the right to make excavations in the streets of that city for the purpose of laying down or repairing pipes, but that it must, within a reasonable time after having opened the street, restore it to as good condition as it was before, and if it failed to do so, and any person was injured in consequence, the water company became liable for any damages he may have suffered.

(2) That the defendant receiver had the same right to open the streets, and was under the same obligation to restore them to their former condition within a reasonable time; and that it was further his duty, in case the water company had before he became receiver opened the streets at any place, and had not restored them to as good condition as they were before, to put them, at the places so opened, in as good condition as they were before, provided he knew, or by the exercise of reasonable diligence ought to have known, that such street had been at any place left in a defective condition.

(3) That it was not necessary, in order that the plaintiff recover in this action, that it appear that the defendant had, or ought to have had, personal knowledge of the defect claimed to have existed in the street; but if the agent or servant of the defendant, as receiver, who was charged with the duty of restoring the street to its former condition in case it needed work of that character, knew, or in the exercise of reasonable diligence ought to have known, of the defective condition of the street, the law imputes knowledge of the condition of the street to the defendant, and in such case the plaintiff may recover.

(4) That it was the duty of the defendant himself to acquire knowledge, so far as the same could be acquired in the exercise of reasonable diligence, of any defects in the street occasioned by the water company, or to depute some agent or servant to do so; and if in the exercise of reasonable diligence such agent or servant ought to have known of the defect, then the defendant as receiver became liable to any person having suffered any injuries in consequence of such defect, if, within a reasonable time after its discovery by such agent, the defect is not remedied.

(5) That, though the water company was authorized under the ordinance to make excavations in the streets, yet if it did so it was bound at its peril, so far as human foresight could provide, to restore it to a safe condition, and that it would be liable for all injuries which might ensue and that could have been prevented by the exercise of the very highest degree of watchfulness and care; and that upon the defendant taking possession of the property of the water company it was his duty to exercise, either by himself or by his servants, the highest degree of watchfulness and care. with a view of informing himself of any dangerous places in the streets occasioned by excavations made by the water company, and if, in the exercise of such high degree of watchfulness and care, the defendant, as receiver, either personally or through his agents, had or ought to have learned of any dangerous place in the streets so made, it was his duty to exercise the highest degree of care and caution to restore the same to the condition they were in before the excavations were made.

It is said in criticism of the first paragraph of these instructions that it is physically impossible to so fill an excavation in a street as to restore the earth to its former condition. We do not think that as a matter of law this is true. It may be that under some circumstances of season and locality the statement would hold good, but ordinarily it would not. The ordinance was not introduced in evidence, but it is admitted in the answer that the complaint sets it out according to its substance. We presume therefore that it enjoins no greater burden than does the section of the statute quoted, which authorizes it. In any event the statute declares the duty of the company to be to place the streets in as good condition as they were before the excavation was made. Construed according to its obvious meaning, it requires the streets to be restored to their former safe condition. To say that they must be put in identically the same condition would indeed require the performance of an impossibility, for nothing short of divine power could do this. Barring natural difficulties at certain seasons interfering with

an immediate permanent restoration, we can see no insuperable difficulty in the way of restoring the streets to a safe condition; and, as we have seen, duty in this connection also requires attention to the operation of well-known natural causes, and imposes the burden of guarding against their effect upon earth disturbed and replaced. Standing alone, and without an implied construction placed upon it by the other paragraphs of the instruction, such as paragraph 5, it might seem to impose upon the company and the defendant the duties and liabilities of an insurer; but, in the light of this latter and other instructions implying that safety to the public is the object to be accomplished, the jury could not reasonably have been misled as to its meaning. These remarks also dispose of the contention that this paragraph is in conflict with paragraph 5, in that the first makes the defendant an insurer while the latter only requires him to use the highest degree of watchfulness and care, and to guard against injury so far as human foresight can go. As we have seen, however, the first paragraph is in the language of the statute, and, presumably, of the ordinance, while the latter gives this language the construction which it is evident the legislature intended it to have; for we cannot admit that this body intended to constitute the water company an insurer against every possible injury. The terms "safe condition" and "good condition" are used interchangeably. From this point of view there is no conflict. We think paragraph 5 states correctly the degree of care which it was incumbent upon the company and the receiver to exercise. Our views on this point have already been stated in considering the complaint in the first paragraph of this opinion. In addition to the authorities there cited in support of these views, we cite also: *Chicago* v. *Robbins,* 2 Black, 418, 17 L. Ed. 298; *Homan* v. *Stanley,* 66 Pa. St. 464, 5 Am. Rep. 389; *McCamus* v. *Gaslight Co.,* 40 Barb. 380; *Nelson* v. *Godfrey,* 12 Ill. 20; *Baumeister* v. *Markham,* 101 Ky. 122, 39 S. W. 844; and Wood on Nuisances, Sec. 273. Mr. Wood, in the section cited, states the rule as follows: "Excavations made by authority must be

properly guarded, and every means adopted for protection of public. So, where a person has been authorized to make excavations in a street by the proper authorities, or to make coal openings or cellar flap, he is bound at his peril, so far as human foresight can provide against accident, to keep them in a safe condition; to keep them properly guarded; to have them properly constructed and securely fastened; and is liable for all injuries that ensue that could have been prevented by the exercise of the very highest degree of watchfulness and care."

The same criticism upon paragraphs 2, 3, and 4 is disposed of by the remarks just made upon paragraph 1.

Complaint is also made that paragraphs 2, 3, and 4 are in direct conflict with paragraph 5, in that the former state the correct rule as to the degree of care to be exercised by the receiver to discover the condition of streets after assuming control of the water plant, while the latter is altogether erroneous. That the conflict exists is clear, and it is impossible to reconcile it; but it does not therefore follow that the defendant is entitled to a new trial. The rule is recognized by this court that where the instructions are upon a material point, and are in conflict, a new trial will be granted, unless it also appears that the defendant has suffered no prejudice. (*State* v. *Rolla,* 21 Mont. 582, 55 Pac. 523; *Heilbronner* v. *Lloyd,* 17 Mont. 299, 42 Pac. 853.) If, however, the conflicting instructions are upon an immaterial point, and it is not reasonably apparent that the jury have been misled, a new trial will not be granted. In our opinion it is not a material question in this case whether the receiver had notice of the condition of Eleventh avenue at the time of the accident. It is not sought to hold him personally liable for any act of willful neglect, but merely to hold him, as the successor of the water company, for an omission of duty in his trustee capacity. At the time he entered upon the discharge of his duties the defect in the street existed. He took the franchise of the company and its property, and continued its operations. The duty to restore the street was a continuing one. The company was, by the order appointing him, stripped

of its power and resources and was unable to perform the duties
which primarily appertained to it. The street at the time was
in such a condition as to be a public nuisance, or to become one
as soon as the frost disappeared; and, as it would have been
the duty of the company to foresee and provide against what
would almost certainly occur, so it was his duty to use the same
precaution, because he was substituted for the company, with
all the duties and responsibilities which would have appertained
to it had he not been appointed. We do not see how, under
*City of Rochester* v. *Campbell, supra,* he could have escaped
liability to the city had it been compelled to answer for the
accident; indeed, certain propositions assumed in that case to
be settled law would hold him liable to the city. Much less,·
under the principle of *Vaughan* v. *Railway Co.* and *Johnson*
v. *Friel, supra,* can he escape liability to a passenger under the
plea that he had no notice of the situation, brought about by
natural causes, after his appointment. He cannot be heard to
say that an omission of duty on his part should ·be brought to
his notice before he could be held to answer for it. (Elliott on
Railways, Sec. 1112; *Texas & Pac. Railway Co.* v. *Geiger,*
79 Tex. 13, 15 S. W. 214; *Bonner* v. *Mayfield,* 82 Tex. 234,
18 S. W. 305.) From this view of the case the instructions
complained of were not material, and though conflicting are
not ground for a new trial. It is clear that the jury could not
have been misled by them, for it is unimportant whether they
considered the question of notice at all. Assuming, however,
that notice to the receiver was necessary, the evidence stated
warranted the finding that he had such notice, or should have
had it; for it is clear that his employees had notice, and more
than once attempted to repair the defect. They knew that the
excavation had been made. They knew that the earth had not
all been returned to the excavation. Some of their various
attempts to remedy the defect were made after the appointment
of the receiver. Knowledge of these employees was notice to
him of the existence of a condition which, under some circum-
stances, would become a menace to the public. The fact that

all the earth had not been replaced, and the subsidence of the surface, were a warning that there was possible danger; and it was imperative that the defect be sought out and remedied. Notice of the apparent condition carried with it notice of the actual condition,—that is, that the earth had been disturbed during the frost season, and a dangerous condition was likely to intervene; and the duty owed to the public required the exercise of the utmost diligence to guard against injury. So it is that it does not matter which rule of diligence was applied by the jury. They were justified in finding that the receiver was put upon notice of the condition, which through his neglect resulted in the injury of which the plaintiff complains.

It is urged by appellant that only reasonable or ordinary diligence should be required of the company, or the defendant receiver, to guard against injury caused by defects in the street such as the one in question; and counsel cite *King* v. *Miles City Irrigating Ditch Co.,* 16 Mont. 463, 41 Pac. 431, 50 Am. St. Rep. 506; *Hopkins* v. *Butte & Montana Commercial Co.,* 13 Mont. 223, 33 Pac. 817, 40 Am. St. Rep. 438, and *Sweeney* v. *City of Butte,* 15 Mont. 274, 39 Pac. 286. But all of these cases are easily distinguishable in fact and principle from the present case. In *King* v. *Miles City Irrigating Ditch Co.* the question involved was the degree of care required of a ditch owner to keep his ditch in repair so as to prevent the water from breaking over and overflowing his neighbor's land. It was held that the defendant was not an insurer, but should be held to the exercise of ordinary care in the management of his ditch. *Hopkins* v. *Butte & Montana Commercial Co.,* was an action for damages against defendant resulting from an overflow of water occasioned by a jam of logs which he was engaged in floating down a stream through plaintiff's ranch to its mill. It was held that the defendant was engaged in a lawful business, and that it was bound to use ordinary care only to prevent injury to the lands of the plaintiff during the pursuit of its business. The principle of these cases does not apply to the present case, for the reason that the water company has no right to make any

excavation in the streets except upon permission of the city council, and then only upon condition that they be restored after a reasonable time to as good condition as they were in before. A failure to restore the streets rendered the company guilty of maintaining a nuisance; therefore it should be held at least to the highest degree of care in the performance of this condition. The last case cited by counsel (*Sweeney* v. *City of Butte*) was an action against the city of Butte for damages caused by plaintiff's falling into a cellar under a sidewalk through defective and dangerous trapdoors set in the sidewalk. It was held that under such circumstances the city authorities were bound to use all reasonable care to see that the person so permitted to occupy the sidewalk kept it properly guarded and protected, so that passengers would suffer no injury; and that, under the facts of the case, the defendant was properly held liable for the injury. None of these cases is authority for the position assumed by appellant in this case. The rule of diligence applied in this latter case is the ordinary rule by which municipal corporations are held liable for failure to keep streets in a reasonably safe condition for the protection of the public.

Several other questions were presented in the argument, but the alleged errors upon which they are based are not of sufficient merit to demand notice.

Let the judgment and order denying the motion for a new trial be affirmed.

*Affirmed.*

Motion for rehearing denied July 1, 1901.