WARREN MIKESELL V. J. A. DURKEE AND W. H. STOUT, *Partners as Durkee & Stout.*

1. CITY STREETS; *Private Railroad.* A city has no right or authority to give permission to any individual or corporation to construct or operate a purely private railroad upon the public streets of the city. All the statutes which have reference to railroad companies or others constructing or operating railroads through or upon the public streets of a city, simply have reference to such railroad companies or others as perform the duties of common or public carriers, and to such railroads as are public or *quasi* public in their character.

2. ——— *Action by Abutting Lot-Owner.* Where a person or corporation attempts to construct a purely private railroad upon any of the public streets of a city, any abutting lot-owner whose property is or may be injured thereby may maintain an action to perpetually enjoin such person or corporation from making such use of the streets.

*Error from Bourbon District Court.*

ACTION brought by *Mikesell* against *Durkee & Stout*, to perpetually enjoin them from excavating in a public street in front of plaintiff's lots in Fort Scott, and from constructing and operating a railroad on such street and in front of his lots. On November 28, 1884, Hon. C. O. French, district judge, dissolved a temporary injunction obtained by plaintiff in said action. This ruling *Mikesell* brings here for review. The opinion states the material facts.

*A. A. Harris,* for plaintiff in error.
*Ware & Ware,* for defendants in error.

The opinion of the court was delivered by

VALENTINE, J.: This was an action brought in the district court of Bourbon county, by Warren Mikesell against J. A. Durkee and W. H. Stout, partners as Durkee & Stout, to perpetually enjoin the defendants from excavating in a public street in front of the plaintiff's lots in Fort Scott, Kansas, and from constructing and operating a railroad in such street and

in front of such lots. Durkee & Stout are not a railroad corporation, nor common or public carriers, nor is it their intention to become such; but their object in making the excavations and in constructing the railroad is wholly and entirely for their own private and individual purposes, and to enable them the better to carry grain, etc., to and from their elevator, situated on lots adjoining the plaintiff's lots, and to and from the Missouri Pacific Railroad, which is not far from their elevator. The defendants have the permission of the city of Fort Scott to make such excavations and to construct and operate such railroad; but if they do so, they will thereby injure the plaintiff's lots, making it more difficult for him to obtain ingress to or egress from the same. On these facts and the others in the case, the only questions to be considered are, whether the defendants have a right to make such excavations and construct such railroad; and if not, then whether the plaintiff has a right to a perpetual injunction to enjoin them from doing so.

The city of Fort Scott is a city of the second class, and the act (Comp. Laws of 1879, ch. 19) relating to such cities provides, among other things, as follows: The mayor and council shall have the care, management and control of the city, and the power to enact ordinances, not repugnant to the constitution or laws of the state, such as they may deem expedient for the good government of the city, and "the benefit of trade and commerce, and the health of the inhabitants thereof, and such other ordinances, rules and regulations as may be necessary to carry such power into effect," (§ 31,) and are empowered "to open and improve streets, avenues and alleys, make sidewalks and build bridges, culverts," etc., (§ 32, subdiv. 2;) "to open, widen, extend, or otherwise improve any street, avenue, alley, or lane," (§ 54;) to "prohibit and prevent all encroachment into and upon the sidewalks, streets, avenues, alleys, and other property of the city," (§ 55;) and to regulate "the building of bulkheads, cellar and basement-ways, stairways, railways, . . . and all other excavations through and under the sidewalks, or along any streets of the

city," (§ 55.)    The said act also provides, among other things, as follows:

"SEC. 64. The council shall have power to regulate levees, depots, depot grounds, and places of storing freight and goods, and to provide for the passage of railways through the streets and public grounds of the city; also to regulate the crossings of railway tracks, and to provide precautions and prescribe rules regulating the same; and to regulate the running of railway engines, cars and tracks within the limits of said city, and to prescribe rules relating thereto, and to govern the speed thereof; and to make any other and further provisions, rules and restrictions to prevent accidents at crossings, and on the tracks of railways, and to prevent fires from engines."

"SEC. 67. For any purpose or purposes mentioned in the preceding sections, the council shall have power to enact and make all necessary ordinances, rules, and regulations; and they shall also have power to enact and make all such ordinances, by-laws, rules, and regulations, not inconsistent with the laws of the state, as may be expedient for maintaining the peace, good government and welfare of the city, and its trade and commerce; . . ."

Section 17 of the act of 1883 relating to railroads reads as follows:

"SEC. 17. Any person, upon written permission given by the board [of railroad commissioners], may exercise in the same manner and to the same extent as is now enjoyed by railroad companies the right of condemning and appropriating land, and laying out and constructing any spur, switch or railroad track thereover, and connecting the same with any railroad already constructed; and the right to use such spur, switch or track shall be public, at rates and on terms and conditions such as the board shall prescribe, if the parties interested cannot agree." (Laws of 1883, ch. 124, § 17.)

We think it may be laid down broadly and upon general principles, that no city has any right or authority to give permission to any individual or corporation to construct or operate a purely private railroad upon any of the public streets of the city; and that all the statutes which have reference to railroad companies or others constructing or operating railroads through or upon the public

1. City street, no private railroad upon.

streets of a city, simply have reference to such railroad companies or others as perform the duties of common or public carriers, and to such railroads as are public or *quasi* public in their character. As lending support to this proposition, see the case of *Smith v. City of Leavenworth*, 15 Kas. 81, 86. In that case it is held that—

"Under existing laws no city has any power to confer upon any private person any right to use a street, or any portion of the same, for the purpose of a cellar-way, *or for any* other purpose, *except for passing and repassing."*

No private excavations can be allowed in a public street, no laying down of a private railroad track, and indeed no use of a public street can be allowed, except its use for public travel and transportation. And we further think that whenever any person or corporation attempts to construct any purely private railroad upon any of the

2. Injunction maintained by abutting lot-owner.

public streets of a city, any abutting lot-owner whose property is or may be injured by it may maintain an action to perpetually enjoin such person or corporation from making such use of the street. By such action he is merely protecting his own private interests, and interests which differ from those possessed by the public in general. In support of such right of action, we would refer to the following cases: *Milhau v. Sharp*, 27 N.Y. 611; *White v. Flannigain*, 1 Md. 525; same case, 54 Am. Dec. 668; *Ewell v. Greenwood*, 26 Iowa, 377; *Wilson v. City of Mineral Point*, 39 Wis. 160.

Of course where a city has given permission to construct a public railroad upon a public street of the city, injunction will not lie to restrain its construction or operation; and there might be cases where a public railroad has already been constructed and is in operation without any permission from the city, that injunction would not lie to restrain its operation. But neither of these is the present case. Also, under §17 of the act of 1883 relating to railroads, any person, as well as a corporation, may construct a public railroad; but in order that a single person, or persons not organized into a corporation, should have authority to construct a public railroad, he

or they should first obtain the permission so to do from the state board of railroad commissioners. Now there is no pretense in the present case that the defendants have ever obtained any such permission; nor is there any pretense that they are intending to construct or operate a public railroad. The railroad which they contemplate constructing and operating is to be a railroad of a purely private character. If it were intended that it should be a railroad of a public character, so that the plaintiff might also use it, as well as the defendants, it is possible that he would not object to its construction; but as it is to be a purely private railroad, a railroad which he will have no right to use, a railroad which cannot be used for any kind of transportation in connection with the elevator on his lots, and a railroad which will injure his property, he objects to its construction; and we think he has a right to so object, and we think he has a right to maintain this present action to enjoin the defendants from so constructing such railroad. The right and the power of cities to grade their streets is of course conceded; but no such question as this is involved in the present case. The principal questions which are involved in the present case are, whether a city has the power to authorize private persons to make an excavation about sixteen feet wide and from eight to twelve feet deep in a public street in front of a private person's lots, and all this merely for the purpose of enabling such first-mentioned private persons to construct a purely private railroad in such street; and has the city the power to authorize the construction of such a railroad in one of its public streets? We think a city has no such power.

The order of the court below dissolving the temporary injunction will be reversed, and the cause remanded for further proceedings.

All the Justices concurring.