FRANK H. WARREN

*v.*

THE CITY OF CHICAGO.

*Filed at Ottawa January 25, 1887—Rehearing denied March Term, 1887.*

1. WATER WORKS IN TOWNS AND CITIES—*laying lateral service pipes—assessment of vacant lots, therefor.* The municipal authorities of a city provided for the laying of lateral service pipes from the main water supply pipes to lots abutting on the street in which the main supply pipe was laid, and a special assessment was levied upon each lot for the cost of the lateral pipe conducted to it. Among these lots so assessed were some that were vacant, and the owner of them claimed that because they were vacant there was no use, public or private, for the improvement for which the property was assessed, and that the assessment was invalid on that ground. But it was considered that, in the absence of any statutory provision on the subject, the action of the city authorities in that regard was not such an abuse of the discretionary power vested in them as to justify any interposition on the ground suggested.

2. SAME—*discriminating between property owners—subdividing lots for purposes of assessment for lateral service pipes.* Abutting upon a street in which lateral service pipes were proposed to be laid in order to connect the water main with adjacent property, were certain vacant lots having a frontage of forty-five feet. The city authorities, for the purposes of assessment for the improvement, made an equal subdivision of these lots, proposing to lay a service pipe to each half lot, and a special assessment was levied upon the property accordingly,—that is, for one service upon each half lot, being for two service pipes upon each whole lot. Other lots having a frontage of twenty-five instead of forty-five feet, were, under the scheme adopted, to be provided with but one service pipe for each entire lot, and these lots were assessed as entire lots. It was *held*, that, conceding the power to make the assessment, the scheme adopted, as far as the lots having the greater frontage were concerned, was unauthorized and void. Under the circumstances, that property should not have been assessed for more than one service pipe to each whole lot.

APPEAL from the County Court of Cook county; the Hon. RICHARD PRENDERGAST, Judge, presiding.

Mr. F. C. HALE, and Mr. M. W. ROBINSON, for the appellant:

It is a well settled rule of law that the taxing power, and the power to levy special assessments, can be exercised only

to raise money for public purposes. A public use or purpose is the essence of a tax; and the same rule applies to special assessments. Dillon on Mun. Corp. (3d ed.) secs. 593, 736; Cooley on Taxation, 42.

A tax for a private purpose is a solecism in language. *In re Wapello County,* 13 Iowa, 405.

A tax for a private purpose is unconstitutional, though it pass through the hands of public officers. *Sharpless* v. *Philadelphia,* 21 Pa. St. 147.

In order to justify an assessment, the improvement must be for a public purpose, since the public have no right to tax a citizen to make improvements for his own benefit, solely. *Hammett* v. *Philadelphia,* 65 Pa. St. 146.

A tax can not be levied on any portion of the public for the construction of a drain in which the public are not concerned. Even the owner of the land benefited can not be taxed to improve it unless public considerations are involved, but he must be left to improve it or not, as he may choose. *People* v. *Supervisors,* 26 Mich. 22.

The power of the city to perform the work does not depend upon the benefits to be derived by property owners. The work is done for the benefit of the public. The assessment for its payment is levied upon abutting lots because the public good demands it. *Morrison* v. *Hershire,* 32 Iowa, 271.

The common council were not authorized to construct sewers for the mere private convenience or benefit of particular individuals. They could be lawfully made only when the commodiousness of the highway for its proper purposes, and its safety, and the healthfulness of the vicinity, require them. *Cone* v. *Hartford,* 28 Conn. 363.

The question of what is a public purpose, is not one of public policy, determinable by a municipal legislative body, but is a judicial question, for the court to determine. Dillon on Mun. Corp. (3d ed.) sec. 600, and cases cited; Cooley on Taxation, pp. 42, 67, and cases cited.

Mr. George M. Haynes, for the appellee:

The authority for making the assessment in question is found in section 1, article 9, of chapter 24, and reads as follows: "That corporate authorities of cities and villages are hereby vested with power to make local improvements by special assessment or by special taxation, or both, of contiguous property, or general taxation, or otherwise, as they shall by ordinance prescribe."

If it appears from the record in this case, that the laying of water service pipes on the street in question is a local improvement, within the meaning of the statute cited, then we take it that the first objection, to-wit, that the assessment is not for public purposes, of appellant, is answered.

The improvement, we concede, is not, in one sense, a general public improvement; but that it is, in a somewhat restricted sense, a public improvement, local to the street and property thereon, there is no question in our minds. There, too, is a feature to this improvement that makes it general.

The testimony brings this case within the rule laid down in the case of *Levy* v. *City of Chicago,* 113 Ill. 650.

Mr. Justice Mulkey delivered the opinion of the Court:

This is an appeal, by Parker H. Warren, from a judgment of the county court of Cook county, confirming a special assessment levied by the city of Chicago upon thirty-two lots belonging to appellant, and fronting on South La Salle street, in said city, for the purpose of constructing "water service pipes" to be laid from said lots, and connected with the main water pipe in said South La Salle street. The appellant is a non-resident, and the property in question is vacant, and not in use for any purpose. One-half of the lots in question front on the east, and the other on the west side of La Salle street, are forty-five feet wide, one hundred and twenty feet deep, and having an alley in the rear for an outlet. For the pur-

poses of the assessment each of these lots is divided east and west, the north portion being designated as the north half, and the south portion as the south half. As thus divided, each half lot, by the proposed scheme, is to be provided with and is assessed for one service pipe. Each service pipe on the west side of the street is estimated at $21.75, and on the east side at $28.35, making them cost, on an average, $25.05 apiece. At this rate, the assessment amounts to $50.10 for a whole lot, or $1603.20 for the thirty-two lots. It further appears that lots belonging to others, having a frontage of twenty-five instead of forty-five feet, are, under the scheme adopted, to be provided with but one service pipe for each lot, the cost thereof being the same as above stated,—that is to say, $21.75 for lots on the west side of the street, and $28.35 for lots on the east side.

It is objected that an ordinance which thus discriminates between the owners of property, for the purposes of an assessment, is unreasonable, oppressive and unjust, and for that reason is void. It is also claimed, that because the property in question is vacant, there is no use, public or private, for the improvement for which the property is assessed, and that the assessment is invalid on that ground. With respect to this last objection but little need be said. That incorporated towns and cities have the power to establish and maintain water works within their corporate limits, and thus provide for the convenience, health and public welfare of such municipalities, can not be questioned. It is also equally well settled that they have a large and wholesome discretion in such matters, with the exercise of which courts have no right to interfere, except where such discretion is clearly about to be abused. In the absence of any statutory provisions relating to the subject, it is for the corporate authorities to say in what streets the main and lateral service pipes shall be laid down, so as to bring the water within the reach of consumers. Their chief, if not only, guide, in the exercise of their discretion with respect

to these matters, is the wants, true welfare and necessities of the people. Everything considered, we are not prepared to say there has been such an abuse of the city's discretion in this respect, as to justify the court in interposing on the ground last suggested.

The other objection is of a more serious character. That the plan or scheme of assessment adopted discriminates unjustly against appellant, is too plain to admit of serious doubt. The fact that his lots happen to be twenty feet wider than the lots of some of the others, affords no reason why he should be arbitrarily compelled to pay for an extra service pipe, for which neither he nor the public has any present or prospective use. Had an estimate been made of the entire frontage of appellant's lots, and he had then been required to pay the same as others in proportion to such frontage, the plan would have had at least the appearance of justice; but as it is, it has not. Computing his assessment on this basis, his entire assessment would have been $1442.88, whereas his assessment, as made, unless we have inadvertently committed some error in the calculation, exceeds this sum $160.32.

Conceding the power to make the assessment, we are clearly of opinion that the scheme adopted, so far as appellant's property is concerned, was unauthorized and void. Under the circumstances, the property should not have been assessed for more than one service pipe to each whole lot. This would reduce the assessment to $801.60,—just one-half of what is now demanded. The only shadow of justification which is shown for this discrimination against appellant, is the arbitrary subdivision made of his lots for the purposes of the assessment, which was done without any authority, either in law or fact. There is no pretence it was done with the sanction of appellant, or that the property was ever theretofore known or designated as it is described in the assessment proceeding. Had two tenements been erected on each lot, thereby showing an intention on the part of the owner to divide the

lots for residence or business purposes, quite a different ques-
tion would be presented. No such question, however, is raised
by this record, and it would therefore be useless to discuss it.

The judgment of the county court will therefore be reversed,
and the cause remanded for further proceedings in conformity
with the views here expressed.

*Judgment reversed.*

SCOTT and SHELDON, JJ., dissenting.

Subsequently, on March 15, 1887, on an application for a
rehearing, the following additional opinion was filed:

Per CURIAM: The conclusion reached upon the former con-
sideration of this case was rested upon two distinct grounds,
one of which, as it now appears, was founded, in part, upon
a misapprehension of facts. While this does not at all affect
the judgment itself, it has made it necessary to modify the
opinion so as to make it conform to the facts as we now un-
derstand them. This has been done. Adhering, as we do, to
the conclusion heretofore announced, the petition for a rehear-
ing must be overruled.                     *Petition denied.*