CASCADE COUNTY, RESPONDENT, *v.* CITY OF GREAT
FALLS, APPELLANT.

[Submitted October 7, 1896.   Decided October 19, 1896.]

STREETS AND HIGHWAYS—*Bridge—Repairs.*—Where the limits of a city are extended
to the opposite side of a river so as to embrace a bridge then owned by the county,
the bridge becomes part of the city street by which it is approached and thereby
ceases to be within any road district as established by the county, or under the con-
trol of county officers, but falls within the jurisdiction of the city officers by whom it
should be kept in repair. (Sections 325, subd. 10, 419, 435, 1842, 1852-1854, fifth div.
Compiled Statutes.)

*Appeal from Eighth Judicial District, Cascade County.*

ACTION to determine the liability of the city for repairs on
a bridge within the city limits.   Submitted on an agreed
statement of facts.   Judgment was rendered for the county by
BENTON, J.   Affirmed.

Statement of the case by the court.

The controversy for determination is whether the city of
Great Falls or the county of Cascade is liable to repair and
maintain a wagon bridge spanning the Missouri river in that
city.   The case was submitted to the district court upon an
agreed statement of facts, as provided by statute.   The court
rendered a judgment in favor of the county.   The city
appeals.

An epitome of the facts is as follows:   In 1888 a private
corporation built the bridge.   At that time, the city of Great
Falls extended to the river and bridge, but did not include the
bridge.   In 1890 the county bought the bridge from the pri-
vate corporation.   In 1892 the county replanked the bridge,
and insured the same for a period of three years in favor of
the county.   In 1891 the said city of Great Falls, pursuant to
the laws governing municipal corporations, extended its limits
to the other side of the river, so that the city now includes the
bridge and its approaches on both sides.   There are some

other facts stated, which, however, are not material to the controversy. The bridge is in a bad state of repair, and both the county and city refuse to repair it. The question for determination is simply whether the city or the county is liable for said repairs.

The statutes of the state which are material to the inquiry are as follows:

Section 325, div. 5, Compiled Statutes, reads as follows: "The city council of all cities incorporated under this act shall have the following powers: * * * (10) To lay out, establish, open, alter, widen, extend, grade, pave or otherwise improve streets, alleys, avenues, sidewalks and public grounds, and vacate the same ; to provide for lighting and cleaning the streets, alleys, avenues; to regulate the use of sidewalks, and require the owners of the premises adjoining to keep the same free from snow or other obstruction; to regulate the depositing of ashes, garbage or other offensive matter in any street, alley or on public grounds ; to provide for and regulate street crossings, curbs and gutters ; to regulate and prevent the use or obstruction of streets, sidewalks and public grounds, by signs, telegraph poles, posting hand-bills and advertisements.

Other sections are as follows :

"Section 419. The city council shall have power to condemn and appropriate private property for opening, establishing, widening or altering any public street, avenue, alley, lane, park, sewer, waterway, or for any other public use, and the resolution or ordinance of the city council ordering, directing, authorizing or providing for the taking of private property for any such use shall be conclusive as to the necessity for such taking.

"Section 1842. It shall be the duty of the board of county commissioners at each session thereof to apportion the amount of money in the treasury available for road purposes to the several road districts, and notify the road supervisor of the amount subject to his order, and in no case shall any supervisor be allowed to draw more money than is apportioned to said district.

"Section 1852. It shall be competent for the municipal authorities of any town or city incorporated under the laws of this state to provide by ordinance for the levy and collection of a tax of not exceeding two mills on the dollar on all taxable property within the corporate limits of such town or city, and also a special tax of three dollars on each able bodied man between the ages of twenty-one and forty-five years, residing within the corporate limits of such town or city, which shall constitute a street fund, and shall be expended in opening, improving and keeping in repair the streets and alleys of such town or city.

"Sec. 1853. All ordinances for the levy and collection of street taxes, either special or *ad valorem*, shall provide that persons liable to pay the same may work out such taxes if they elect so to do, under the direction of the street commissioner or supervisor of such town or city, upon the streets thereof, and shall provide for giving notice of the time and place when and where such work shall be required to be done.

' Section 1854. Whenever any such town or city shall provide by ordinance for the levy and collection of such street taxes, no further or other road tax shall be levied or collected by the county treasurer of the county in which such town or city is situated, of or from the residents thereof, nor shall any portion of the road taxes collected in the county be expended upon the streets or alleys of such corporate town or city, and thirty per cent. of the *ad valorem* tax collected under and by virtue of any such ordinance shall be paid into the county treasury by the city treasurer, and so much of said thirty per cent. as may be necessary shall be apportioned to the road district in which such town or city is situated, to be expended on roads of said district outside town limits, and the surplus, if any, shall, be for the credit of the general road fund.

"Section 435. No parts of the streets of any city shall be in any road district established by the county commissioners, nor be under the control of any county officers. No overseer of highways shall be elected in and for such city, but the poll tax shall be collected as hereinafter provided, and shall be

expended on the streets, highways and public places governed by the city council and officers of their appointment.''

*Sam Stephenson*, for Appellant.

*H. J. Haskell*, for Respondent.

PER CURIAM.—When the bridge was purchased by the county from the private corporation, it was made a free public bridge. A public bridge is part of the highway. (11 Am. & Eng. Ency. Law, 541 ; Elliott, Roads & S. p. 21, *et seq.;* Morrill, City Neg. p. 69, *et seq.*, and numerous cases cited in these text books.)

We are of opinion that the statutes quoted in the statement foregoing are decisive of this case. A bridge, being a part of the street, cannot be in any road district established by the county, nor can it be under the control of any county officer. (Compiled Statutes, div. 5, § 435.) It is within the jurisdiction of the city officers. (Id. § 325, Subd. 10 ; Id. § 419·) Sections 1852 to 1854 provide for the raising of funds by the city for repairing the streets.

The reports are full of cases deciding these questions, but they are not of special interest in this controversy, for the reason, as above noted, that it clearly appears that the statutes are conclusive.

The judgment of the district court will therefore be affirmed.

*Affirmed.*