## MRS. V. L. SHEPARD BROWN *v.* CITY OF MERIDIAN.

### [59 South. 795.]

1. PUBLIC WATER SUPPLY. *Duty of city. Supply pipe.*

  Where a city has acquired the ownership of the waterworks previously owned by a private company and constructed to supply water to the citizens of the municipality, the property owner must look after and keep in proper condition all service or supply pipes branching off from the mains of the city, where such pipes cross over the property of the owner, and the city is bound to render the service pipe along its streets adequate to all reasonable demands as much so as it is required to construct its mains to enable it to comply with its duty to furnish an adequate supply of water to its patrons.

2. SAME.

  That part of the pipe running along the city streets is in legal contemplation, a part of its system and under its sole control, and it is responsible for all damage arising out of its obstruction, or from its lack of capacity to carry an adequate supply of water.

3. SAME.

  The city in such case being responsible for the upkeep and continued efficiency of the pipe in the street, and the property owner charged with the same burdens when the pipe reaches his property, and the owners of abutting property having no legal right to go upon and excavate the streets of the city, the fact that the abutting property owner claimed ownership of the pipe, having put it in before the city obtained ownership of the plant, does not change or affect the rights and duties of the parties.

APPEAL from the circuit court of Lauderdale county. HON. JNO. L. BUCKLEY, Judge.

Suit by Mrs. L. V. Shepard Brown against the city of Meridian. From a judgment for defendant, plaintiff appeals.

The facts are fully stated in the opinion of the court.

*Wyatt Easterling,* for appellant.

The court erred in modifying instructions numbers 1, 2, 4 and 5 requested by appellant, in that it submitted

the issue on the sole question of ownership, which modifications are fully set forth in the official record hereof, filed in your court and appearing at pages 99 to 101 inclusive.  In support of my contention I humbly submit that my position is correct and in harmony with the Mississippi law, as set forth in the case of *Thompson* v. *City of Winona,* decided by this court on January 31, 1910, and appearing in 51 So. 129, 130 thereof, wherein the following language is employed, to-wit:

MAYES, J.   The declaration states a perfect cause of action against the city, and the demurrer was improperly sustained.  It made no difference to whom this sewerage system belonged.  The thing causing the damage complained of was the act of the city in compelling its citizens to connect with same; thereby causing the filth of the city to be poured upon the plaintiff to his great damage.

"It is not necessary for us to consider or determine to whom the service pipe belonged, or under whose control it is.  It is either clear from the evidence that the corporation cock is under the exclusive control of the city, or it was for the jury to say, under the evidence, under whose control it is; and by their verdict they have said that it was under the control of the city.  It was therefore the city's duty to remove this obstruction within a reasonable time.  This it failed to do, thereby becoming liable to appellee for damages sustained by her by reason thereof."   *City of Jackson* v. *Anderson,* 51 So. 896.

In the case of *Fewell et ux.* v. *City of Meridian* and appearing in 43 So. Rep. 438, this court speaking through WHITFIELD, C. J. said:

"The facts, we think plainly show that, although Meyer had the cross pipe constructed as a sanitary pipe from his residence (afterwards sold to appellant) to the main sewer pipe of the city under Thirty-third avenue, nevertheless, the city, certainly with full knowledge that

it did cross through the manhole—not emptying into the
manhole, however—and did so cross the manhole as to
be opposite the outlet pipe, assume control over the man-
hole and cross pipe, and all connected with it, and know-
ing that this cross pipe accumulated drift and other ob-
structive material, and thus prevented the proper flow
of the surface water out through the outlet pipe, yet, al-
lowed this manifestly improper construction of the man-
hole and cross pipe to remain unrectified, after full and
repeated notice of the condition of affairs and request
for repairing it. The principle is one abundantly sup-
ported by the authorities which we shall subjoin—that
no matter who constructed the cross pipe in the man-
hole, if the city assumes an exercised control over the
manhole and the cross pipe, and dealt with it as a part
of its drainage system, the city is liable for any damages
occasioned by such wrongful construction of the cross
pipe and the manhole, if it has been duly notified and
failed to correct the situation.'' This holding by the
court was abundantly supported by numerous authori-
ties cited in that opinion and I submit that the proposi-
tion which militated or destroyed appellant's cause of
action was erroneous, and in direct conflict with the hold-
ings of this court, as appellee acknowledged that it had
constant and continuous notice from appellant touch-
ing and covering the very grievance which forms the
predicate of this suit; appellee acknowledged even more,
as it said in substance through Sen. C. C. Dunn, its wit-
ness, that it had full knowledge of this, and refused to
remedy the damaging condition because it, appellee, be-
lieved that the pipe in question was not the property of
appellee. The testimony shows, and would show more
fully if the court had not precluded appellant from pre-
senting the proof, that the reason why appellant did not
receive an adequate supply of water was that appellee
had too many customers on that pipe in question to per-
mit an adequate amount of water to reach appellant.

*Gilbert, Bordeaux & Venable,* for appellee.

The errors relied upon by learned counsel for appellant are the modifications of the instructions requested by appellant on the trial of this cause, which confined the issue to the pleadings in the case, to wit, the ownership of these pipes. These instructions with their modifications were read to the jury and adopted by appellant, and under repeated adjudications of this court he cannot complain of these modifications as will appear from the following cases: *Coleman* v. *Railroad Co.,* 90 Miss. 629; *Williams* v. *State,* 95 Miss. 671.

That being the issue on which the case was tried and the chief contention of counsel for appellant, we submit disposes of the argument of learned counsel for appellant in this case. This was the question on which the jury was instructed in the various charges given by the court on behalf of appellee, and the instructions of which learned counsel complain are the counterpart of these instructions, and he cannot complain of the issues made in this case to which he acceded.

If it had been demonstrated in the case at bar, as were the facts in the cases cited by learned counsel for appellant, that the city of Meridian did actually control the lateral service pipes for such length of time as would be tantamount to an ownership of the pipes, and if it had been a question in which the public at large was vitally interested, as are all question of drainage and sewer connections, then there might be some merit in the questions presented by learned counsel.

In the case of *Thompson* v. *City of Winona,* 51 So. 29-30, there was a case where the city compelled certain citizens to connect with a certain sewer pipe, which cause the filth of the city to be dumped upon plaintiff in that case, to his great damage. Practically the same thing is involved in the Fewell case, 43 So. 438, which was a sewer pipe, which on account of the crossed-up condition, caused the drift to be formed and by that reason

flooded plaintiff's property to his great damage. They assumed control over that as a drainage system. No question here of a private grievance as between the city and the other party on an inadequate sewer system or anything of that sort.

COOK, J., delivered the opinion of the court.

The city of Meridian acquired ownership of the waterworks constructed by a private company to supply water to the citizens of the municipality. It seems that, when the plant was controlled by the private company, the husband of appellant laid a supply pipe along one of the city's streets, and connected same with the mains of the company and with the home of appellant; that this supply pipe, at a certain point in the street, was tapped or diverted to carry water to another house belonging to appellant's husband. This supply pipe and the tapping, as above stated, was the work of plaintiff's husband, or some other person other than the original company or the city. After the city assumed the control of the plant, complaint was made to its officers in charge of its waterworks that the supply of water furnished by the city to appellant was entirely inadequate. The city refused to do anything to remedy the trouble, taking the position there was no defect in their mains; but the defect, if any existed, was in the supply pipe constructed by plaintiff's husband, and that the city was under no obligations to remedy defects in this pipe. The evidence fails to show lack of pressure or other defects in the city's mains, but the cause of the inadequate supply of water flowing into plaintiff's home is directly traceable to a faulty construction of the above-mentioned service or supply pipe. The trial court instructed the jury, in effect, that the supply or service pipe belonged to appellant, and that the city was under no duty to repair same, so as to afford an adequate supply of water for plaintiff below.

It will be observed that the supply pipe was laid along and under one of the public streets of the city, and it appears clearly if not indisputably, that the sole cause for the failure of the water to flow freely and in adequate quantities into the home of appellant was located in a street of the city. Had this defect in the pipe been promptly remedied, and this could have been done at a trivial expense and in a very short time, all cause for complaint would have been fully met. There was some contention as to whether the plaintiff below, who is appellant here, had entered into a formal written contract with the city for a water supply; but there is no doubt of the fact that she was receiving, and the city was furnishing, the service, and that she was paying the city for the water.

It may be conceded that a property owner must look after and keep in proper condition all service or supply pipes branching off from the mains of the city, where such pipes cross over the property of the owner; but the cause of the trouble in the present case was not located upon the property of the plaintiff, but in the streets of the city. The city was just as much bound to render the service pipe along its streets adequate to all reasonable demands as it was to so construct its mains as to enable it to comply with its duty in furnishing an adequate supply of water to its patrons. In truth, that part of the pipe running along its streets was, in legal contemplation, a part of its system and under its sole control; and it was responsible for all damage arising out of its obstruction, or from its lack of capacity to carry an adequate supply of water.

When the city took over the water plant, it found this connection already installed, and it continued to supply water through this pipe to appellant, and to take tolls therefor. The diameter of the pipe in no way affects the legal status of the parties. No line can be drawn as to the size of mains, and the test here is the location of

the pipe; the city being responsible for the upkeep and continued efficiency of the pipe in the street, and the property owner charged with the same burdens when the pipe reaches his property. The owners of abutting property have no legal right to go upon and excavate the streets of the city; and the fact that appellant claimed ownership of the pipes does not change or affect the rights and duties of the parties.

This interpretation of the law of the present case seems to announce the only rational and practical rule by which the rights of citizens, dealing with cities assuming the duties of public service corporations, can be preserved, and by which such cities can be forced to recognize and perform their duties to the public. The trial court in its rulings made the rights of the parties depend upon the ownership of the service pipe in the street, and submitted this question to the jury. The law fixed the ownership in the city of that part of the pipe along and under its street, and, the obstruction being in this portion, the court should have directed a verdict for plaintiff.

Reversed and remanded.

*Reversed and remanded.*