NORD, APPELLANT, *v.* BUTTE WATER CO., RESPONDENT.

(No. 7,192.)

(Submitted February 1, 1934. Decided March 10, 1934.)

[30 Pac. (2d) 809.]

312

*Mr. H. L. Maury* and *Mr. A. G. Shone,* for Appellant, submitted a brief; *Mr. Maury* argued the cause orally.

*Mr. D. M. Kelly, Mr. D. G. Stivers, Mr. John V. Dwyer, Mr. John A. Groeneveld* and *Mr. James T. Finlen, Jr.,* for Respondent, submitted a brief; *Mr. Groeneveld* argued the cause orally.

MR. JUSTICE MATTHEWS delivered the opinion of the court.

The plaintiff, Frances Nord, has appealed from a judgment of dismissal and for costs, entered on a directed verdict in favor of the defendant, the Butte Water Company, a corporation.

The action was founded on injuries received on the night of September 27, 1932, when, on a dark residential street in the city of Butte, Mrs. Nord tripped over a "curb-box" capping an open pipe leading down to the service-pipe conducting water from the defendant's main to a private residence. Originally the top of the curb-box had been set level with the sidewalk and about a foot inside the curb, but the sidewalk had settled or been forced down until the box stood more than two inches above its level; according to witnesses for the plaintiff this condition had existed for more than two years prior to the night of the accident.

The defendant operates the Butte water plant as successor to the original waterworks company, under and by virtue of "Ordinance number 152" of the city of Butte. In 1893 the company promulgated rules and regulations, among which is the requirement that "all expense of laying service-pipes from the mains to premises must be borne by the consumer," and that a cast-iron curb-box must be placed one foot inside the curb, and must be "kept in order and easily accessible." The offending curb-box was installed in 1896 and bears the legend "The Butte Water Company."

In 1916, after the creation of the Public Service Commission, the company submitted to the commission, and the commission approved, the "rules, regulations and rates" of the waterworks company, which likewise required the consumer to install and care for the service-pipe and curb-box, and required the owner of premises to sign "an application for the introduction of water service" to any premises "on a regular form furnished by the company." The "form" requests the company to supply water to the designated premises "sub-

ject to the conditions, rules and regulations of the * * * company," so approved. The present owner of the premises, in front of which plaintiff was injured, acquired the dwelling in 1926, and thereupon signed such an application.

In 1920 the city passed an ordinance requiring all plumbers, before doing any work, either installing or repairing supply pipes, to secure a permit; but this ordinance expressly excepts "necessary repairs * * * defined as consisting of repairing leaks in soil, drain, waste, vent or other pipes and repairs on valves and faucets." In 1929 a second ordinance was passed requiring the property owner to secure a permit before installing new service-pipes and curb cocks or boxes, "or the repair of service pipes now existing," which permit shall only be issued upon the payment of all costs, fees, and charges "for the making of openings in the streets or alleys."

The position taken by the defendant, and evidently adopted by the trial court, is that: (a) Under the rules, regulations and ordinances set forth, the service-pipes and curb-box belong to the property owner, upon whom is cast the burden of keeping them in repair; therefore the defendant owed no duty to the plaintiff, and, as a consequence, was not liable to her for her injury; (b) that, if the defendant owed a duty with reference to the curb-box, it was not violated, as the condition arose because of a defect in the sidewalk and not in the curb-box; (c) that, as the company was neither an owner nor a plumber, it could not have secured the permit required to make the repair.

(a) The authorities cited by the defendant in support of the first assertion, with one exception, deal only with the rights, duties and liabilities of the city or utility company, and its customers, *inter sese*. The exception (*Fisher* v. *St. Joseph Water Co.*, 151 Mo. App. 530, 132 S. W. 288) holds that the customer may be required to install the service-pipe and curb-box, and, having done so, they become "appurtenances to his realty," and, "as between him and the water company, the burden was his to maintain it in repair." Arguing from this postulate, and without the citation of an authority, the court

held that the only duty owing by the company was to select an instrumentality reasonably safe for the purpose intended, and, the duty of maintaining it in repair being on the property owner, the company was not liable to a pedestrian injured by stumbling over the curb-box, which had been forced above the level of the ground.

If a water company can legally require the consumer to lay or pay for the laying of service-pipes in the street, and to install a curb-box in the sidewalk and maintain it in repair, this holding might be logical, were it not for the fact that there exists somewhere a public duty to maintain the public way in a reasonably safe condition for travel. The declaration that the consumer is, in the circumstances, in duty bound to repair the curb-box "as between him and the water company" does not answer the question as to who must discharge this public duty; a question seemingly entirely overlooked by the Kansas City Court of Appeals.

The question whether a water company can legally require its customers to lay or pay for service-pipes "is not settled" (Wyman on Public Service Corporations, sec. 824, and note), but it is said that "it appears to be held with entire uniformity of decision" that this cannot be done in the absence of statutory regulation (*Millville Imp. Co.* v. *Millville Water Co.*, 92 N. J. Eq. 480, 113 Atl. 516), and where, as in the case at bar, the franchise ordinance fixes the water rates to be charged, rules and regulations making such requirement have been declared to be unreasonable, unjust, and unenforceable. (*Title Guarantee & Trust Co.* v. *Railroad Com. of California*, 168 Cal. 295, 142 Pac. 878, Ann. Cas. 1916A, 738; *Alvord* v. *City of Syracuse*, 163 N. Y. 158, 57 N. E. 310; *Hatch* v. *Consumers' Co.*, 17 Idaho, 204, 104 Pac. 670, 40 L. R. A. (n. s.) 263, affirmed 224 U. S. 148, 32 Sup. Ct. 465, 56 L. Ed. 703; *State ex rel. De Burg* v. *Water Supply Co.*, 19 N. M. 36, 140 Pac. 1059, Ann. Cas. 1916E, 1290, L. R. A. 1915A, 246; *City of Janesville* v. *Janesville Water Co.*, 7 Wis. R. C. R. 628; *City of Montgomery* v. *McDade*, 180 Ala. 156, 60 So. 797,

798; *Cleveland* v. *Malden Water Works Co.,* 69 Wash. 541, 125 Pac. 769.)

Wyman, in his work cited above, says: "On the other hand there is as much authority, if not more, to the effect that the requirement by legislation" may be upheld; citing *Prindiville* v. *Jackson,* 79 Ill. 337; *Warren* v. *City of Chicago,* 118 Ill. 329, 11 N. E. 218; *Palmer* v. *City of Danville,* 154 Ill. 156, 38 N. E. 1067; *Jackson* v. *City of Ellendale,* 4 N. D. 478, 61 N. W. 1030; *Gleason* v. *Waukesha County,* 103 Wis. 225, 79 N. W. 249. These cases uphold the authority of a city by ordinance to require the consumer to stand the expense of laying service-pipes; no one of them justifies the statement that such a burden may be imposed "by the regulation of the company." The North Dakota case alone deals with the duty of keeping in repair, and it but declares that this burden is on such a consumer in order to prevent *waste of water* from the city-owned plant. None of these cases deal with the duty to the traveling public, whose interests are "entitled absolutely to first consideration." (2 Pond on Public Utilities, 854.)

It may be that the authority of our Public Service Commission, created long after the installation of the instant service-pipe and curb-box, is sufficiently broad to cause its approval of the rules and regulations of the water company to cast upon the present owner the duty of maintaining the curb-box "in repair and easily accessible"—a question we need not here determine—but if so, the requirement does not fix responsibilty for the performance of the public duty under consideration. Even if the approval of the commission has the effect of raising the rules and regulations of the company to the dignity of legislation, there is no intimation therein of any intention to make the property owner liable to third parties.

"In the absence of any legislative enactment upon the subject, an abutting owner is not liable to travelers for injuries received by them because of a defect in the street in front of his premises, unless such defect was caused by his own act or fault." (Elliott on Roads & Streets, 4th ed., 1179; 13 R. C. L. 321.) Elliott cites many cases holding that a statute

320

attempting to cast such a burden upon the property owner is unconstitutional. The reason for such holding is that the requirement that the property owner keep the sidewalk in repair is laid under the taxing, not the police, power and therefore cannot extend to rendering the owner liable for the failure of the city to perform its duty to the public. (*Noonan* v. *Stillwater,* 33 Minn. 198, 22 N. W. 444, 53 Am. Rep. 23.) Other courts give some effect to such a statute by holding that it applies only to cases arising from the active negligence of the property owner. (*Selleck* v. *Tallman,* 93 Wis. 246, 67 N. W. 36; *Hay* v. *City of Baraboo,* 127 Wis. 1, 105 N. W. 654, 115 Am. St. Rep. 977, 3 L. R. A. (n. s.) 84, and note.)

In this state the fee to the street is in the state; the city is but a trustee thereof (*City of Butte* v. *Mikosowitz,* 39 Mont. 350, 102 Pac. 593); a sidewalk is but a part of the street. (*Kipp* v. *Davis-Daly Copper Co.,* 41 Mont. 509, 110 Pac. 237, 21 Ann. Cas. 1372, 36 L. R. A. (n. s.) 666; *Mitchell* v. *Thomas,* 91 Mont. 370, 8 Pac. (2d) 639.) The city has the same control over, and duties with reference to, the sidewalk as it has respecting any other part of the street. (6 McQuillin on Municipal Corporations, 2796.) Primarily the city is charged with the duty of keeping its streets, including the sidewalks, in a reasonably safe condition for travel. (*State ex rel. Rocky Mt. Bell Tel. Co.* v. *Red Lodge, Mayor,* 30 Mont. 338, 76 Pac. 758; *Cascade County* v. *City of Great Falls,* 18 Mont. 537, 46 Pac. 437; *Mullins* v. *City of Butte,* 93 Mont. 601, 20 Pac. (2d) 626.)

The power of a city to permit any private use of its streets can be exercised only for the benefit of the general public. (*Adams* v. *Ohio Falls Car Co.,* 131 Ind. 375, 31 N. E. 57; *Mikesell* v. *Durkee,* 34 Kan. 509, 9 Pac. 278.) Therefore a city is liable, in the first instance, in case of injury, although the defect is caused by the negligence of another, also liable. (*District of Columbia* v. *Sullivan,* 11 App. D. C. 533; *Brown* v. *Town of Louisburg,* 126 N. C. 701, 36 S. E. 166, 78 Am. St. Rep. 677; *Town of Franklin* v. *House,* 104 Tenn. 1, 55 S. W. 153; *City of Atchison* v. *Acheson,* 9 Kan. App. 33, 57 Pac.

248.) A city will be liable for an injury growing out of a defective sidewalk, notwithstanding a provision in its charter requiring the abutting property owner to maintain the sidewalk and making him liable for such injury (*City of Lincoln* v. *Pirner*, 59 Neb. 634, 81 N. W. 846; see, also, *Snook* v. *City of Anaconda*, 26 Mont. 128, 66 Pac. 756, and *Ford* v. *City of Great Falls*, 46 Mont. 292, 127 Pac. 1004); this because the care which devolves upon the city as the trustee of the public cannot be delegated (Smith on Public Corporations, 1316) or surrendered (2 Pond on Public Utilities, 855), though, of course, the city may have an action over against the property owner whose negligence resulted in the injury. (Thompson on Negligence, 789; *City of Rochester* v. *Montgomery*, 72 N. Y. 65; *Sweet* v. *City of Atkinson*, 191 Iowa, 645, 182 N. W. 793.)

When, therefore, the city by ordinance requires the abutting property owner to keep the sidewalk in repair, the city's duty to the public is not affected; it merely makes the individual a joint agent with the city officials for the performance of the city's duty. (*Childers* v. *Deschamps*, 87 Mont. 505, 290 Pac. 261.) The fact that the individual may be liable because of his active negligence for injury resulting from his own act, as in the so-called coalhole cases, does not relieve the city of liability. (4 Dillon on Municipal Corporations, 5th ed., 2985.) "It does not vary the principle, or discharge the liability that individuals * * * are permitted to use the premises, above or below the easement, for private purposes not inconsistent with the right of the public." (*Bacon* v. *Boston*, 3 Cush. (Mass.) 174; *Nelson* v. *Godfrey*, 12 Ill. 22.)

Now, "the power of private corporations to sell water to consumers in any given community depends upon legislative grant." (*Western New York Water Co.* v. *Buffalo*, 213 App. Div. 458, 210 N. Y. Supp. 611.) The paramount rights of the public must be exercised and controlled by the legislature, or the municipality, acting under delegated authority, and in granting the privilege the granting power has authority to attach conditions to its exercise. (3 Dillon on Municipal Corporations, 1952, 1996, 2137.)

Here the state has delegated authority to our cities and towns by subdivision 73 of section 5039, Revised Codes of 1921 (as amended by Laws 1927, Chap. 20), to permit the use of streets and alleys for the purpose of laying down gas, water and other "mains," but has attached to the privilege the condition that "the streets and alleys must be placed in as good condition by the person or corporations making the excavation as they were before the excavation was made and the main laid down." Under this statute the city had authority to grant the water company the right to lay its "pipes and mains," and this "carried with it the obligation to keep them in repair." (*Robinson* v. *Mills,* 25 Mont. 391, 65 Pac. 114, 116.)

Pursuant to the authority granted the city, it by Ordinance 152 granted to the predecessor of the defendant, "its successor and assigns," a perpetual right of way in the streets and alleys for the laying not only of its "mains," but "water-pipes," for the purpose of "supplying the city of Butte and its inhabitants with water." The ordinance imposed the condition that the company post a bond in the penal sum of $25,000, conditioned to indemnify the city "against all damage and loss by reason of the construction, maintenance or operation of said system of water-works." This because the mains and all laterals, fixtures and connections—the "water pipes" which the company is authorized to lay—within the franchise limits, that is, the streets, together constitute the "system of water-works" mentioned in the ordinance granting the franchise. "There is a clear and well-defined boundary line existing between the property of the water company and the property of the lot owner; that line is the one existing between the lot and the street or alley. The citizen owns his pipes and fixtures to that line, and beyond it is the company's property and water system. The rights, duties and liabilities of each go to that extent and no farther." (27 R. C. L. 1397.)

Without the "water-pipe" connecting the mains with the property of the customers, the mains would be useless, and without the curb-cock, reached through the curb-box, the com-

pany would have no means of enforcing the payment of rent or of shutting off the water for any purpose without again opening the street for the purpose of disconnecting the service-pipe from the main. While the supply pipe is installed for the benefit of the consumer, it is equally true that it is installed for the benefit of the company desiring to supply water for hire.

Although there is some testimony in the record to the effect that the property owner might secure, or have made, a key and thus make use of the curb-box, it is clear that such appliance is installed for the sole benefit of the company; under the rules, and of necessity, a second stop-cock must be installed within the premises for the purpose of shutting off water from the house and draining the pipes, and this second instrumentality is the only one of its kind which is of benefit to the property owner.

Aside from the use to which the several instrumentalities mentioned are put, the right to lay pipes in the streets exists only in the public utility, and without· special permission from the municipality the consumer would have no authority to tear up the street and lay pipes therein. (*State ex rel. De Burg* v. *Water Supply Co.*, 19 N. M. 36, 140 Pac. 1059, Ann. Cas. 1916E, 1290, L. R. A. 1915A, 246.) Neither under the franchise ordinance nor any ordinance of the city existing at the time of the installation of the pipes here considered is there any intimation that the property owners are accorded any such right.

It has been aptly said that: "Pipes laid in the cartway should be the property of the utility, that there might be no question as to the responsibility in case of lack of proper care and attention to such service lines." (*Panther Valley Water Co.* v. *Public Service Com.*, 70 Pa. Super. Ct. 8.)

For the protection of the paramount right of the traveling public in the sidewalk for such use as was intended by its dedication to the public, neither the city nor the utility company, granted a special privilege therein, should be permitted to pass the burden of reasonably safe maintenance on to

the owner or tenant of the abutting property; the one may be a nonresident, the other irresponsible; those in whom the streets are vested as trustees of the public should be held responsible to a member of the public injured through failure to sustain the public duty of maintenance.

Only that which is granted in clear and explicit terms passes by the grant of such a franchise, and the grant is to be construed strictly in favor of the public; whatever is not unequivocally granted is withheld; nothing passes by implication. (*Knoxville Water Co.* v. *Knoxville*, 200 U. S. 22, 26 Sup. Ct. 224, 50 L. Ed. 353.)

The obligations of the public service corporation may be imposed by the grant or safely left to the implication of the law (Wyman on Public Service Corporations, 343), but whenever the franchise granted operates to impose a duty to the public upon such a corporation, the burden thereof cannot be shifted to its customers (27 R. C. L. 1409; *Pine Bluff Corp.* v. *Toney*, 96 Ark. 345, 131 S. W. 680, Ann. Cas. 1912B, 544; *Kimball* v. *North East Harbor Water Co.*, 107 Me. 467, 78 Atl. 865, 32 L. R. A. (n. s.) 805. If a city has no authority to create a condition, it cannot confer power to do so on a water company. (*Decatur Water Works Co.* v. *Foster*, 161 Ala. 176, 49 So. 759.)

Therefore, as, when the city imposes the duty to maintain the sidewalk in repair, it merely makes the property owner its agent for the performance of its duty (*Childers* v. *Deschamps*, supra), so here, by imposing upon the consumer the duty of keeping the curb-box in repair, the water company but makes the property owner its agent for the performance of its public duty to maintain that instrumentality in repair. (*McClaugherty* v. *Bluefields Waterworks & Imp. Co.*, 67 W. Va. 285, 68 S. E. 28, 32 L. R. A. (n. s.) 229; *Toutloff* v. *City of Green Bay*, 91 Wis. 490, 65 N. W. 168.) The paramount duty is upon the corporation, and this is inconsistent with a primary duty upon the property owner. "The existence of an absolute power of control in one party, and an imperative obligation to repair in another, is impossible." (*City of Rochester*

v. *Campbell*, 123 N. Y. 405, 25 N. E. 937, 939, 20 Am. St. Rep. 760, 10 L. R. A. 393.)

The curb-box is clearly a part of the company's "system of ▮ water-works"—its means of controlling the use of water by its customer and the payment of rent therefor. Under its franchise the duty of maintaining this instrumentality in repair for the protection of the traveling public was cast upon the company and by it assumed, and that duty was not affected by the circumstance that the cost of labor and materials used in the construction of the connecting box was paid by the occupant or owner of the property. (*Washington Gaslight Co.* v. *District of Columbia*, 161 U. S. 316, 16 Sup. Ct. 564, 40 L. Ed. 712; *City of Des Moines* v. *Des Moines Water Co.*, 188 Iowa, 24, 175 N. W. 821.) Even though the property owner claims ownership of it "does not change or affect the rights and duties of the parties." (*Brown* v. *City of Meridian*, 102 Miss. 384, 59 So. 795, 796.)

(b) As to the contention that the injury resulted from the condition of the sidewalk and not of the curb-box: The condition imposed upon the company by its franchise was not that it keep its instrumentalities in repair, but that it save the city harmless from loss or damage resulting from the "construction, maintenance or operation of its system of water-works."

The dangerous condition of the sidewalk resulted, according to plaintiff's showing, not because of a depression in the sidewalk, but because of the existence of the curb-box within the depressed area. The city is only required to keep its streets in a reasonably safe condition for travel; perfection is not possible; slight depressions in a sidewalk are not actionable defects, unless so deep as to be dangerous. (6 McQuillin on Municipal Corporations, 5685–5687.) Such a depression as was here described in itself was not a "dangerous condition" (*Baker* v. *City of Detroit*, 166 Mich. 597, 132 N. W. 462; *City of Louisville* v. *Uebelhor*, 142 Ky. 151, 134 S. W. 152; *Terry* v. *Village of Perry*, 199 N. Y. 79, 92 N. E. 91, 20 Ann. Cas. 796, 35 L. R. A. (n. s.) 666), but the question whether the condition caused by the existence of the insert in the depres-

sion was "dangerous" is for the jury. Judgments against cities under similar circumstances have been uniformly upheld. (*Parrish* v. *Huntington*, 57 W. Va. 286, 50 S. E. 416; *Redford* v. *City of Woburn*, 176 Mass. 520, 57 N. E. 1008; *City and County of Denver* v. *Magivney*, 44 Colo. 157, 96 Pac. 1002.) Where a city, not operating a water plant, was mulcted in damages for injury sustained under circumstances identical with those in the instant case, it was held to have an action over against the water company. (*City of Des Moines* v. *Des Moines Water Co.*, supra.)

It is true, as pointed out in *Great Northern Utilities Co.* v. *Public Service Com.*, 88 Mont. 180, 293 Pac. 294, that in Iowa the regulation of public utilities is in the cities, and, as stated by counsel for defendants, it does not appear that the Des Moines regulations required the property owner to repair the curb-box; but from what is heretofore said it is clear that these differences do not militate against the decision as an authority here.

In *Mahoney* v. *City of Helena*, (C. C.) 96 Fed. 790, it was held that a water company was not liable to a pedestrian who stumbled over a curb-box standing above the level of the way, but this was because of the active fault of another in entirely removing the sidewalk, which the company was neither authorized nor required to replace.

The defendant asserts in line with this decision, that "no danger existed by reason of the presence of the curb-box until the sidewalk was broken" by an independent cause and was not, therefore, the "proximate cause" of the injury, citing 45 C. J. 932, wherein such a rule is announced. However, the text continues: "But where the condition was such that the injury might have been anticipated * * * it will be the proximate cause notwithstanding the intervening agency." The record discloses a conflict in the evidence as to whether the depression in the sidewalk was caused by sinking for years before the accident or its recent breaking down by a truck. A sudden emergency, not brought to the notice of

the company, might affect liability, but in the condition of the testimony the court was not warranted in directing the verdict.

(c) There is no merit in the assertion that, because of the city ordinances respecting the laying and repair of water-pipes, the company was relieved from repairing the curb-box. Those ordinances but require the owner or plumber to secure a permit before opening the streets for such purposes; they apply as well to the "connections," which, under its rules, the company obligated itself to make; they specifically exclude from their operation minor repairs. If the ordinances require the employment of a licensed plumber, it was the duty of the company to secure such service in the discharge of its public duty. Here, however, the record discloses that the curb-box was so constructed of interserving sections that it could be easily screwed down to the proper level by the use of a "stilson wrench."

The judgment is reversed and the cause remanded for a new trial.

MR. CHIEF JUSTICE CALLAWAY and ASSOCIATE JUSTICES ANGSTMAN, STEWART and ANDERSON concur.

Rehearing denied March 29, 1934.